UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER JOY and MISTY THOMAS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:23-CV-01590-SRW |
| MISSOURI HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI d/b/a MOHELA, | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY
OF THE STATE OF MISSOURI'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

THOMPSON COBURN LLP
William R. Bay, #26977(MO)
Jeffrey R. Fink, #44963(MO)
Matthew D. Guletz, #57410(MO)
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63101
(314) 552-6000 (telephone)
(314) 552-7000 (facsimile)
wbay@thompsoncoburn.com
jfink@thompsoncoburn.com
mguletz@thompsoncoburn.com

Attorneys for Defendant MOHELA

## INTRODUCTION

The Court should dismiss this case against Defendant Higher Education Loan Authority of the State of Missouri ("**MOHELA**"), which is an arm of, part, and an instrumentality of the State of Missouri, because the Eleventh Amendment bars this case; MOHELA's sovereign immunity under Missouri law bars Plaintiffs' claims; the Higher Education Act of 1965, as amended, 20 U.S.C. § 1001 *et seq.* (the "**HEA**"), preempts Plaintiffs' state law claims; and Plaintiffs' claims are otherwise legally deficient, as discussed below.

**Federal Student Loan Public Service Loan Forgiveness**. In accordance with the HEA, the United States Department of Education (the "**USDOE**") makes loans to students to help them finance their postsecondary education. The USDOE enters into contracts with various entities, including MOHELA, to service federal student loans on its behalf. Compl. ¶¶ 31, 166.

The HEA includes a Public Service Loan Forgiveness ("**PSLF**") Program, pursuant to which a borrower may apply to have the USDOE discharge (*i.e.*, forgive) the remaining balance of her federal student loans after she has made 120 monthly payments while working for one or more qualifying employers (government or not-for-profit organizations). *See* 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219; Compl. ¶ 3. In general, the borrower is responsible for arranging for an authorized official of each of her qualifying employers to certify the borrower's employment and sign the borrower's PSLF application. *See* https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service (last visited on Feb. 12, 2024).[1] Moreover, to qualify for PSLF, the borrower must work full-time for a qualifying employer when she submits her PSLF application. 20 U.S.C. § 1087e(m)(1)(B); 34 C.F.R. § 685.219(c)(1)(ii)(B).

---

[1] This Court may take judicial notice of the USDOE's website. *See, e.g., Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016).

The USDOE, with the assistance of one of its contracted loan servicers, determines whether an applicant qualifies for PSLF.  Before the Summer of 2022, the Pennsylvania Higher Education Assistance Agency ("**PHEAA**"), also known as "FedLoan Servicing," was the loan servicer that assisted the USDOE with PSLF applications. Compl. ¶ 5. Starting in the Summer of 2022, the USDOE transitioned this role from PHEAA to MOHELA. *Id.*

There is no provision in federal law or the USDOE's loan servicing contract[2] with MOHELA (*see* **Exhibit 1**) or the amendments thereto dealing with PSLF (*see* **Exhibit 2**)[3] (collectively, the "**Contract**") that dictates how quickly a PSLF application must be processed. To the contrary, in Amendment 91003120F0331P00029 effective September 15, 2021 (*see* **Ex. 2**, at 2-10) and subsequent amendments on March 31, 2023 and January 2, 2024 (*see id.*, at 38-54), the USDOE laid out in great detail how MOHELA was required to process each PSLF application. Nowhere in the original PSLF amendment or subsequent amendments related to PSLF (*Id.*), however, did the USDOE specify any timeframe within which MOHELA was required to complete the processing of a PSLF application. Moreover, the USDOE advises borrowers that "[p]rocessing times will vary depending on factors such as whether you previously submitted documentation of employment for review or submitted documentation only at the time you

---

[2] The Complaint repeatedly references the Contract, and Plaintiffs assert a breach of contract claim against MOHELA based on a third party beneficiary theory. *See* Complaint, Count 2. This Court "may consider documents 'necessarily embraced by the complaint, as well as documents 'incorporated by reference, or integral to the claim' in assessing a 12(b)(6) motion to dismiss[,]" and can do so without converting the motion to dismiss into a motion for summary judgment. *Spring Lake Pork, LLC v. Great Plains Mgmt., LLC*, No. 2:19 CV 18 CDP, 2019 WL 6496570, at *2 (E.D. Mo. Dec. 3, 2019) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) and *Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013)).  In ruling on MOHELA's motion to dismiss, this Court may consider the Contract.

[3] Exhibit 2 contains the amendments that pertain to MOHELA's role with respect to the PSLF Program.

applied for loan forgiveness, the number of your employers, any gaps in your employment or payment history, and any required follow-up." *See* https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service/questions (last visited on Feb. 12, 2024). Regardless of how long it takes to process a borrower's PSLF application, the borrower will ultimately make only 120 payments to the USDOE if she qualifies for PSLF: "Any payments you make beyond the 120 that are required would be refunded to you if it is determined you qualify for forgiveness." *Id.*

**MOHELA**. The Missouri General Assembly established MOHELA pursuant to an organizational law enacted in 1981. A provision in the law declares MOHELA a state instrumentality:  "The authority is hereby constituted a public instrumentality and body corporate, and the exercise by the authority of [its] powers … shall be deemed to be the performance of an essential public function." RSMo. § 173.360.  MOHELA's public function is related to student financial assistance in higher education.

In 2011, MOHELA was selected by USDOE to service student loans on a national basis. MOHELA entered into the Contract with USDOE at that time. *See* **Ex. 1**.[4]  MOHELA remains a third-party servicer of USDOE (the owner of the loans) and MOHELA is not itself a party to the underlying loan arrangements or documents between USDOE and its Direct Loan borrowers.

**Plaintiffs' claims**. Plaintiffs Jennifer Joy and Misty Thomas complain that their PSLF applications have not yet been granted.[5] They bring this putative class action against MOHELA—

---

[4] This Court may also take judicial notice of the fact that the 2011 contract between MOHELA and USDOE has at all relevant times been publicly available. *See* https://sam.gov/opp/d9e44d6034ed4edbb0880b0bceb3bd42/view (EDFSA11D0012.pdf) (last visited on Feb. 12, 2024).

[5] Although beyond the scope of this motion, the Court should be aware that Plaintiffs' PSLF applications have not been approved for forgiveness by the USDOE, either because Plaintiffs have not made 120 qualifying payments and/or they have failed to take the necessary

but not the USDOE, which has the sole authority to grant forgiveness under PSLF—because of MOHELA's alleged "failure to timely process and render decisions for student loan borrowers enrolled in the Public Service Loan Forgiveness program." Compl. ¶ 1. They purport to assert claims against MOHELA for: (1) violations of the Colorado Student Loan Equity Act, Colo. Rev. Stat. § 5-20-101 *et seq.* (the "**Colorado Act**"); (2) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (the "**Florida Act**"); (3) violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and f (the "**FDCPA**"); (4) breach of the Contract; (5) breach of fiduciary duty; (6) negligence; (7) accounting; and, (8) unjust enrichment.

**Dismissal Grounds**. The Court should dismiss this case because the Eleventh Amendment of the United States Constitution bars the Court from hearing it. As the United States Supreme Court recently determined in *Biden v. Nebraska*, 143 S.Ct. 2355, 2366, 2375 (2023), MOHELA is a part of and an instrumentality of the State of Missouri. MOHELA has not consented to this Court exercising jurisdiction in this case. Accordingly, the Court must dismiss this case.

Alternatively, the Court should dismiss Plaintiffs' Complaint for the following reasons:

- MOHELA has sovereign immunity under Missouri law, which bars all of Plaintiffs' claims except their contract claim.

- The HEA preempts Plaintiffs' state statutory claims (Counts 1-2) and their state common law claims (Counts 5-8) because neither the Colorado Act, nor the Florida Act, nor any state common law can require MOHELA to process and decide PSLF applications within a certain timeframe; it is the province of USDOE, not the states, to determine how PSLF applications are processed and when they are decided.

- Plaintiff Joy's claim for violation of the Colorado Act (Count 1) fails because the Colorado Act does not impose any obligation to "timely" process and decide PSLF applications.

- Plaintiff Thomas' claim for violation of the Florida Act (Count 2) fails because the Florida Act does not apply to loan servicing and collection activity and does not impose any

---

steps to demonstrate that they have made 120 qualifying payments. Accordingly, any alleged delay in processing Plaintiffs' applications has not delayed Plaintiffs' forgiveness.

obligation to "timely" process and decide PSLF applications.

- Plaintiffs' claim for violations of the FDCPA (Count 3) fails in that MOHELA is not a "debt collector" because Plaintiffs do not allege that their student loans were in default at the time MOHELA began servicing them, a requirement for the FDCPA to apply to MOHELA, and further because MOHELA was acting in its capacity as a bona fide fiduciary to the USDOE.

- Plaintiffs' breach of contract claim (Count 4) fails because they are neither parties to, nor third party beneficiaries of, the Contract and Plaintiffs fail to identify any provision of the Contract that MOHELA supposedly breached.

- Plaintiffs' claims for breach of fiduciary duty (Count 5), negligence (Count 6), and accounting (Count 7) fail because MOHELA does not have any fiduciary duty or duty of care to Plaintiffs.

- Plaintiffs' unjust enrichment claim (Count 8) fails because they have not conferred any benefit on MOHELA in that the USDOE, not Plaintiffs, pays MOHELA for servicing Plaintiffs' student loans.

ARGUMENT

## 1.  The Eleventh Amendment bars this case.

Plaintiffs' entire case suffers from a fundamental flaw and must be dismissed because it is barred by the Eleventh Amendment of the United States Constitution in that MOHELA is an arm of and an instrumentality of Missouri and has not consented to this Court exercising jurisdiction in this case.

Under the Eleventh Amendment, "a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020). "'The Eleventh Amendment protects States ***and their arms and instrumentalities*** from suit in federal court.'" *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023) (emphasis added) (quoting *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018)); *see also Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("[A]n arm or instrumentality of the State generally enjoys the same immunity as the sovereign itself.").

In 2023, the United States Supreme Court conclusively determined that MOHELA is a part of and an instrumentality of Missouri. *Biden v. Nebraska*, 143 S.Ct. 2355 (2023). In *Biden*, the Supreme Court held: "***By law and function, MOHELA is an instrumentality of Missouri***: It was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State." *Id.* at 2366 (emphasis added). The Supreme Court stressed that MOHELA is "an instrumentality created by Missouri, governed by Missouri, and answerable to Missouri" and "***is indeed part of Missouri.***" *Id.* at 2375 (emphasis added). Accordingly, under the Eleventh Amendment, this Court lacks jurisdiction to hear this case and must dismiss it. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996).

Further, as analyzed before *Biden*, MOHELA is an "arm of the state" of Missouri entitled to immunity. Beyond the States themselves, the Eleventh Amendment also protects their "arms and instrumentalities from suit in federal court." *Johnson*, 69 F.4th at 512 (quoting *Webb*, 889 F.3d at 485). The Eighth Circuit considers two factors to determine arm-of-the-state status. First, MOHELA's independence from the State of Missouri is analyzed. *Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*, 640 F.3d 821, 827 (8th Cir. 2011). Second, the court considers how a judgment in litigation involving MOHELA could affect the State of Missouri's treasury. *Id.*

Application of the two-factor test to MOHELA warrants the finding that MOHELA is an arm of the State of Missouri. *First*, the State of Missouri maintains significant control over MOHELA, which is defined as a state instrumentality. *See* RSMo. §§ 173.415, 173.360. The Governor of Missouri directly or indirectly appoints MOHELA's board,[6] and the Governor also

---

[6] Five members are appointed directly with the advice and consent of the State Senate. RSMo. § 173.360. The other two members are: (a) a member of the Missouri Coordinating Board for Higher Education (also appointed by the Governor); and (b) the Commissioner of Higher Education (appointed by the Coordinating Board), who heads the Missouri Department of Higher Education. *Id.*

has the authority to remove any member of MOHELA's board for cause. RSMo. § 173.360. MOHELA is assigned to the Missouri Department of Higher Education ("**MDHE**"), a state agency, and annually files a report of its previous year's income, expenditures, and bonds or other forms of indebtedness issued and outstanding. RSMo. § 173.445.

*Second*, while MOHELA is initially liable for a judgment against it, the State of Missouri may be functionally liable for a judgment against MOHELA. "The Supreme Court has indicated that a money judgment's potential impact upon a State's treasury is of 'considerable importance[.]'" *Pub. Sch. Ret. Sys. Of Missouri*, 640 F.3d at 830 (quoting *Regents*, 519 U.S. at 430-31). The Eighth Circuit acknowledges that "[t]he question is one of 'potential' benefit, however; whether a money judgment in this particular case will actually benefit the State of Missouri's treasury is not the relevant inquiry." *Id*. Recently, in *Biden*, the Supreme Court stated unequivocally that financial harm to MOHELA constitutes harm to the State of Missouri. 143 S.Ct. at 2368. The State of Missouri could be functionally liable for a judgment against MOHELA, and, thus, this second factor also weighs in MOHELA's favor.[7]

**2.      MOHELA has sovereign immunity under Missouri law, which bars all of Plaintiffs' claims except their contract claim.**

Independent of the Eleventh Amendment, MOHELA has sovereign immunity under Missouri law, which bars all of Plaintiffs' claims except for their contract claim (Count 4). The

---

[7] MOHELA acknowledges that in *Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *2-4 (E.D. Mo. July 29, 2021), this Court ruled that MOHELA does not enjoy Eleventh Amendment immunity. MOHELA respectfully submits that aspect of the *Dykes* decision is erroneous in light of the subsequent pronouncements by the Supreme Court in *Biden* that "[b]y law and function, MOHELA is an instrumentality of Missouri"; is "an instrumentality created by Missouri, governed by Missouri, and answerable to Missouri"; and "is indeed part of Missouri." 143 S.Ct. at 2366, 2375; *see also Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("Given [the Missouri] statutory framework, MOHELA may well be an arm of the State of Missouri under the reasoning of our precedent.").

Court, therefore, should dismiss Counts 1-3 and 5-8.

MOHELA's sovereign immunity is independent of and broader than its Eleventh Amendment immunity. *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) ("[S]tates also enjoy a broader sovereign immunity, which applies against all private suits, whether in state or federal court." (quotation omitted)); *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("We have ... sometimes referred to the States' immunity from suit as 'Eleventh Amendment immunity.' The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."). Indeed, the Supreme Court "has repeatedly held that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 754 (2002).

"Basic tenets of sovereign immunity teach that courts may not ordinarily hear a suit brought by any person against a nonconsenting State." *Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580, 587 (2022). Under Missouri law, "[i]n the absence of an express statutory exception or recognized common-law exception, sovereign immunity is the rule and applies to all suits against [Missouri] public entities." *City of Harrisonville v. Bd. of Trustees of Mo Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770, 774 (Mo. 2022) (quotation omitted). "[S]overeign immunity applies to the government and its political subdivisions unless waived or abrogated or the sovereign consents to suit." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. 2016).[8]

---

[8] "Section 537.600 itself waives sovereign immunity only for injuries resulting from public employees' negligent operation of a motor vehicle in the course of employment and for injuries caused by dangerous conditions of the public entity's property. Section 537.610 waives sovereign immunity in certain circumstances involving insurance coverage." *Metro. St. Louis Sewer Dist.*, 476 S.W.3d at 921. None of these exceptions applies in the present case.

This Court has previously held that MOHELA is a Missouri public entity entitled to invoke sovereign immunity. *Dykes*, 2021 WL 3206691, at *5-6. The *Dykes* court relied on *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 919-20 (Mo. banc 1992), which delineated three features common to all public entities: (1) the governmental or public entity must be formed by government itself or by the voters acting as a group; (2) the entity must be controlled by and directly answerable to one or more public officials, public entities, or the public itself; and (3) the entity must perform a service traditionally performed by the government. *Id.* at *5. "A public entity/corporation that possesses all three of the foregoing characteristics is a public corporation for purposes of sovereign immunity." *Id.* This Court concluded that MOHELA was entitled to sovereign immunity under RSMo. § 537.600 because all three requirements were met. *Id.* at *6.

MOHELA's sovereign immunity bars Plaintiffs' statutory claims under the Colorado Act (Count 1), the Florida Act (Count 2), and the FDCPA (Count 3) because Missouri has not waived sovereign immunity with respect to any of these statutes. *See Alden*, 527 U.S. at 707 (states have sovereign immunity from federal Fair Labor Standards Act, including in lawsuits brought in state court); *Nichols v. City of Kirksville*, 68 F.3d 245, 248 (8th Cir. 1995) (sovereign immunity barred claim against city for violating Missouri statute authorizing civil liability for employers who fire an employee in retaliation for a workers' compensation claim); *Barnes v. State of Mo.*, 960 F.2d 63, 64–65 (8th Cir. 1992) (Missouri has sovereign immunity from claims for violation of constitutional rights or the First Amendment Privacy Protection Act).[9]

---

[9] MOHELA cannot be sued by a private party in the courts of Colorado or Florida because of interstate sovereign immunity. *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485 (2019). And Missouri law is not required to recognize any Colorado or Florida statutes. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998) ("The Full Faith and Credit Clause does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." (quotation omitted); *DeCrow v. N.*

MOHELA's sovereign immunity also bars Plaintiffs' claim for breach of fiduciary duty (Count 5) because "[b]reach of fiduciary duty is a claim arising in tort." *Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 810 (Mo. Ct. App. 1996). Likewise, MOHELA's sovereign immunity bars Plaintiffs' claim for negligence (Count 6). *Z.S. by & through P.S. v. Rockwood Sch. Dist.*, 674 S.W.3d 818, 820 (Mo. Ct. App. 2023) ("Section 537.600.1 provides that public entities generally have sovereign immunity from liability in negligence actions.").

The accounting claim (Count 7) stems from Plaintiffs' breach of fiduciary duty claim (Count 5) as Plaintiffs allege that "a fiduciary relationship exists between Plaintiffs and the Class and MOHELA related to Plaintiffs' … student loans…." Compl. ¶ 187. Plaintiffs presumably rely on the rule that "a breach of fiduciary duty gives rise to an action for an accounting if the fiduciary has profited from the breach." *Savannah Place, Ltd. v. Heidelberg*, 122 S.W.3d 74, 81 (Mo. Ct. App. 2003). The accounting claim, which derives from the underlying breach of fiduciary duty claim, is likewise a tort claim barred by sovereign immunity.

Finally, MOHELA's sovereign immunity bars Plaintiffs' claim for unjust enrichment (Count 8). *Thompson v. City of St. Peters*, 220 F. Supp. 3d 975, 981 (E.D. Mo. 2016) (sovereign immunity barred unjust enrichment claim); *Blair v. City of Hannibal*, 194 F. Supp. 3d 875 (E.D. Mo. 2016) (same). Plaintiffs allege that MOHELA "has been unjustly enriched by its deceptive, wrongful, and unscrupulous conduct." Compl. ¶ 196. Plaintiffs' own allegations establish that Plaintiffs' unjust enrichment claim sounds in tort and, in turn, is barred by sovereign immunity.

In sum, MOHELA's sovereign immunity under Missouri law bars Counts 1-3 and 5-8.

---

*Dakota Workforce Safety & Ins. Fund*, 864 F.3d 989, 994 (8th Cir. 2017) (North Dakota was not required to apply Colorado statute).

The Court should dismiss these claims.[10]

### 3. The HEA preempts Plaintiffs' state statutory claims (Counts 1-2) and their state common law claims (Counts 5-8).

Plaintiffs' state statutory claims (Counts 1-2) and their state common law claims (Counts 5-8) are based on Plaintiffs' allegation that "MOHELA has not timely processed and rendered decisions on pending PSLF applications." Compl. ¶¶ 8, 133, 144, 172-73, 177-182, 188, 194. Neither the Colorado Act, nor the Florida Act, nor any state common law requires MOHELA to process and decide PSLF applications within a certain timeframe. But even if any such statute or state common law did so, it would conflict with and be preempted by the HEA because it would impermissibly impose requirements on the administrative mechanics of the federal PSLF Program. It is the province of USDOE, not the states, to determine how PSLF applications are processed and when they are decided.

In *Chae v. SLM Corp.*, 593 F.3d 936, 943-50 (9th Cir. 2010), the court held that the HEA preempted California statutory and common law concerning the method of setting late fees, repayment start dates, and interest calculations on loans made under the Federal Family Education Loan Program, which the USDOE administered through contracts with private lenders and guarantors. The court reasoned that the California state law claims would stand as an obstacle to the uniform administration of the program in accordance with federal law. *Id.*

Other courts have focused on a different analysis of HEA preemption than the Ninth Circuit espoused in *Chae*, but would reach the same result. Some courts have held that the HEA does not

---

[10] Admittedly, MOHELA does not enjoy sovereign immunity from Plaintiffs' contract claim (Count 4). Sovereign immunity is waived as to claims for breach of an express contract that a Missouri government entity has validly entered into. *Hootselle v. Missouri Dep't of Corr.*, 624 S.W.3d 123, 132 (Mo. 2021). Nevertheless, "[t]his does not result in all claims involving contracts as being exempt from the application of sovereign immunity." *Blair v. City of Hannibal*, 194 F. Supp. 3d 875, 881 (E.D. Mo. 2016).

preempt state law claims to the extent they are based on affirmative misrepresentations and misconduct as opposed to failures of disclosure (which are expressly preempted by 20 U.S.C. § 1098(g) of the HEA). *See Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287-295 (3d Cir. 2020); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639 (7th Cir. 2019); *Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238, at *7 (S.D.N.Y. July 8, 2019) ("This is a private tort suit alleging misrepresentations regarding federal loan programs; ***it does not seek to impose new regulatory obligations on loan servicers***." (emphasis added)). But these courts have recognized that HEA preemption applies when, as here, "the need for nationwide consistency on … administrative mechanics is substantial." *Nelson,* 928 F.3d at 651; *Navient*, 967 F.3d at 293; *see also Lawson-Ross*, 955 F.3d at 922.

Here, there must be national uniformity as to the administrative mechanics of the PSLF Program, including how and when PSLF applications are to be processed and decided. Each state cannot be allowed to usurp the USDOE's authority and dictate to the USDOE and its loan servicers how quickly PSLF applications must be processed or decided. Otherwise, the USDOE and its loan servicers would have to comply with 50 different state laws in processing applications under a *federal* program concerning the forgiveness of *federal* student loans.

The potential for mischief is obvious. Allowing states to regulate the administrative mechanics of the PSLF Program (such as how quickly PSLF applications must be decided) could cause chaos and could result in similarly-situated PSLF applicants being treated differently depending on where they reside. For example, absent HEA preemption, what would stop a state from requiring the USDOE and its loan servicers to deem a PSLF application as granted, without regard to whether the borrower satisfied the federal eligibility requirements, if the application was

- 12 -

not processed and decided within a certain amount of time set by the state?

The administrative mechanics of the PSLF Program—including how and when PSLF applications are to be processed and decided—must be left solely to the USDOE. Accordingly, the HEA preempts the Colorado Act, the Florida Act, and any state common law to the extent that they purport to require MOHELA to "timely process and render decisions" on PSLF applications. The Court should dismiss Counts 1-2 and 5-8.

### 4.   Plaintiff Joy's Colorado Student Loan Equity Act (Count 1) claim fails because the Act does not impose an obligation to "timely" process and decide PSLF applications.

Plaintiff Joy contends that MOHELA violated the Colorado Act "by failing to timely process and render decisions on Plaintiff Joy's … PSLF application[ ]." Compl. ¶ 133. Plaintiff Joy alleges other purported violations, all of which derive from her allegation that MOHELA did not timely process and decide her PSLF application. *See* Compl. ¶ 134 (MOHELA "failed to exercise its duty to timely process and render decisions on pending PSLF applications."), ¶ 135 ("MOHELA's schemes, devices, and artifices caused Plaintiff … to issue payments to MOHELA when [she] otherwise would have if the [PSLF] application had been timely processed and the loan forgiven."). While Plaintiff Joy complains that MOHELA has misrepresented her "obligation to continue paying the loan," Compl. ¶ 136, she, in fact, is required to continue paying her student loans until and unless her PSLF application is granted.

In addition to previously-discussed deficiencies, Count 1 should be dismissed because the Colorado Act does not impose any obligation to "timely" process and decide PSLF applications (and, as discussed above, the HEA would preempt the Colorado Act if it did so). The only provision of the Colorado Act that mentions PSLF is Colo. Rev. Stat. § 5-20-109(1)(i), which states:

> Except as otherwise provided in federal law, federal student loan agreements, or a contract between the federal government and a student loan servicer, fail to properly evaluate a student loan borrower for an income-based or other student loan

repayment program or for eligibility for a public service loan forgiveness program **before placing the student loan borrower in forbearance or default**, if an income-based repayment or other program is available to the student loan borrower.

(emphasis added). Section 5-20-109(1)(i) does not impose any timeframe for evaluating PSLF applications. Moreover, the statute only applies if a student loan servicer places "the student loan borrower in forbearance or default" before it "properly evaluate[s]" the borrower's "eligibility for a public service loan forgiveness program." Plaintiff Joy does not, and cannot, allege that MOHELA has placed her in forbearance or default. Accordingly, § 5-20-109(1)(i) is inapplicable.

Plaintiff Joy asserts that "MOHELA [ ] failed to respond to [her] PSLF application within 30 days, in violation of § 5-20-108(2)(a)." Compl. ¶ 138. But § 5-20-108(2)(a) does not impose *any* deadline for processing and deciding a PSLF application. That statute provides:

> A student loan servicer shall respond to a written inquiry from a student loan borrower, the representative of a student loan borrower, or the student loan ombudsperson within ten business days after receipt of the request and, within thirty business days after receipt of the request, provide information relating to the request and, if applicable, the action the student loan servicer will take to correct the account or an explanation for the student loan servicer's position that the borrower's account is correct.

A PSLF application is not an "inquiry," which the statute describes as a borrower's request for information (*i.e.*, a question). The statute does not address the processing of a PSLF application (or any other type of application) submitted by a borrower. Count I should be dismissed.

**5.    Plaintiff Thomas' claim for violation of the Florida Deceptive and Unfair Trade Practices Act (Count 2) fails because the Act does not apply to loan servicing and collection activity, and does not impose any obligation to "timely" process and decide PSLF applications.**

Plaintiff Thomas contends that MOHELA violated the Florida Act "by failing to timely process and render decisions on Plaintiff Thomas' … PSLF application[ ]." Compl. ¶ 144. Plaintiff Thomas alleges other purported violations, all of which derive from her allegation that MOHELA did not timely process and decide her PSLF application. *See* Compl. ¶ 145 (MOHELA "failed to

exercise its duty to timely process and render decisions on pending PSLF applications."). Count 2 is legally insufficient and should be dismissed for several reasons.

First, the Florida Act does not apply to loan servicing and collection activity, such as MOHELA's servicing of Plaintiffs' student loans and processing of PSLF applications. The Florida Act provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices *in the conduct of any trade or commerce* are hereby declared unlawful." Fla. Stat. § 501.204(1) (emphasis added). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Courts interpreting Florida law have held that "[s]ervicing and loan collection activity is not 'trade or commerce' as a matter of law." *Genao v. CitiMortgage, Inc.*, No. 16-23111-CIV, 2017 WL 10775439, at *4–5 (S.D. Fla. Feb. 10, 2017) (dismissing claim against loan servicing company), *report and recommendation adopted*, No. 16-23111-CIV, 2017 WL 10775411 (S.D. Fla. Mar. 1, 2017); *see also Jean-Jacques v. Shellpoint Mortg. Servicing*, No. 20-61813-CV, 2021 WL 8894470, at *2 (S.D. Fla. Feb. 3, 2021); *Rodriguez v. Ocwen Fin. Corp.*, No. 17-CV-60574, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017); *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013).[11]

---

[11] Similarly, the Florida Act does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. §§ 501.212(1). MOHELA's servicing of Plaintiffs' Direct Consolidation loans (including its role in the PSLF process) results from requirements imposed on MOHELA by federal law and contract. *See* 20 U.S.C. 1087a, *et seq.*; 34 C.F.R. 685.100, *et seq.* Thus, the Florida Act does not apply to MOHELA. *See, e.g., Freeman v. Great Lakes Educ. Loan Servs.*, No. 3:12CV331/MCR/CJK, 2013 WL 2355541, at *7 (N.D. Fla. May 28, 2013) (dismissing a claim under the Florida Act because defendant "ECMC, pursuant to its guarantee, is required to attempt collection of defaulted student loans, as in this case. [The plaintiff] has not shown that ECMC is subject to liability under the [the Florida Act].")

Second, the Florida Act does not impose any obligation to "timely" process and decide PSLF applications. Indeed, Plaintiffs cite no such provision in the Florida Act. (Moreover, as discussed above, the HEA would preempt the Florida Act if the Florida Act contained such a provision.) The Court, therefore, should dismiss Count 2.

**6.      Plaintiffs' FDCPA claims (Count 3) fail because MOHELA is not a "debt collector" and, thus, the FDCPA does not apply.**

Plaintiffs assert that "MOHELA has violated the FDCPA by failing to timely process and render decisions on Plaintiffs' … PSLF applications." Compl. ¶ 158. Count 3 should be dismissed because the FDCPA "applies only to debt collectors," *Neff v. Cap. Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003), and MOHELA is not a "debt collector" for two independent reasons.

**a.      MOHELA is not a "debt collector" because Plaintiffs do not allege they were in default of their student loans when MOHELA began servicing their loans.**

First, absent from the Complaint's summary of MOHELA's servicing history pertaining to Plaintiffs (*see* Compl. ¶¶ 14-29) is any allegation that the student loans for which Plaintiffs seek PSLF relief were in default when the USDOE transferred servicing of the loans to MOHELA. This omission is fatal to Plaintiffs' FDCPA claims because a person collecting a debt is not a "debt collector" for purposes of the FDCPA when, as here, the collection activity "concerns a debt which was not in default at the time [the debt] was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

Numerous courts, including this Court, have held that a loan servicer (including a federal student loan servicer such as MOHELA) that begins servicing a loan before borrower default is not a "debt collector" under the FDCPA. *See Memhardt v. Nationstar Mortg., LLC*, No. 4:17-CV-01411-AGF, 2018 WL 5923445, at *8 (E.D. Mo. Nov. 13, 2018); *Stricklin v. Litton Loan Servicing, L.P.*, No. 4:13-CV-1354 CEJ, 2014 WL 1315961, at *1 (E.D. Mo. Apr. 2, 2014)*;*

*Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed. App'x. 458, 459 (5th Cir. 2004) ("[T]he FDCPA does not apply to Sallie Mae [a student loan servicer] because [plaintiff] does not allege that he was in default at the time Sallie Mae began servicing his loans."); *Isner-Monticello v. Nelnet, Inc.*, No. 820CV2135TKKMTGW, 2021 WL 1854631, at *1 (M.D. Fla. May 10, 2021) (dismissing FDCPA claims against student loan servicer where the complaint did not allege the loans were in default when defendant began servicing). Plaintiffs do not allege that their federal student loans were in default when USDOE transferred the servicing of their loans to MOHELA. As a result, MOHELA is not a "debt collector" and, in turn, the FDCPA does not apply.

**b.     MOHELA is not a "debt collector" because it was acting in its capacity as a bona fide fiduciary to the USDOE.**

Second, the FDCPA's definition of "debt collector" exempts "any person collecting or attempting to collect any debt . . . to the extent such activity . . . is incidental to a *bona fide* fiduciary obligation. . . ." 15 U.S.C. § 1692a(6)(F)(i). MOHELA is not a "debt collector" because its actions with respect to Plaintiffs were "incidental" to its "*bona fide* fiduciary obligation" to the federal government (the USDOE) under the Contract. *See Kirk v. ED Fund*, No. 06-4205-CV-C-WAK, 2007 WL 2226046, at *4 (W.D. Mo. Aug. 1, 2007) (dismissing FDCPA claim against ED Fund, a nonprofit corporation founded by the California Student Aid Commission, related to its involvement in the collection of funds from defaulted borrowers on federally guaranteed student loans under the Federal Family Education Loan Program, because ED Fund acted as a fiduciary of USDOE and fell within the "bona fide fiduciary obligation" exception) (citations omitted); *Kuntz v. Educ. Credit Mgmt. Corp.*, No. 1:18-CV-31, 2020 WL 1872332, at *7 (D.N.D. Jan. 7, 2020), *report and recommendation adopted*, No. 1:18-CV-031, 2020 WL 1872325 (D.N.D. Jan. 24, 2020) (entering judgment for defendant on FDCPA claim in part because entity's collection activity related to federally guaranteed student loans and was incidental to entity's fiduciary duty to

USDOE and, thus, the Section 1692a(6)(F) exemption applied); *Montgomery v. Educ. Credit Mgmt. Corp.*, 238 B.R. 806, 810 (D. Minn. 1999) (dismissing claims against guaranty agency because its actions to collect on defaulted student loans owed to USDOE was "incidental to a bona fide fiduciary obligation" to the federal government and its actions were not subject to FDCPA).

Pursuant to the Contract, MOHELA services student loans owned by the USDOE. In this endeavor, MOHELA's collection activity is merely incidental to its primary function of servicing those student loans, including by helping the USDOE to process PSLF applications. As a result, MOHELA is not a "debt collector," the FDCPA does not apply, and Count 3 should be dismissed.

**7.    Plaintiffs' breach of contract claim (Count 4) fails.**

Count 4 asserts that MOHELA breached the Contract with the USDOE "by failing to timely processing [sic] and rendering [sic] decisions on the [PSLF] applications." Compl. ¶ 167. Count 4 is legally deficient and should be dismissed because: (a) Plaintiffs are neither parties to, nor third party beneficiaries of, the Contract; and (b) Plaintiffs fail to identify any provision of the Contract that MOHELA supposedly breached.

**a.    Plaintiffs are not third parties beneficiaries of the Contract.**

Plaintiffs concede that they have no direct contract with MOHELA; instead, they claim they "are third party beneficiaries of the contract entered into between MOHELA and the federal government." Compl. ¶ 166. However, Plaintiffs' theory fails as a matter of law.[12]

---

[12] In cases involving student loan servicing, courts have applied federal common law in determining whether an individual is a third party beneficiary of a federal government contract. *See, e.g., Hyland*, 2019 WL 2918238, at *8 ("Federal common law governs interpretation of 'a federal government contract.'") (quoting *Hillside Metro Assoc., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014)); *Travis*, 460 F. Supp. 3d at 28 ("Federal common law governs the interpretation of federal government contracts, such as ... Servicing Contracts.") (quoting *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092 n.13 (C.D. Cal. 2019)).

"'A nonparty becomes legally entitled to a benefit promised in a contract ... only if the contracting parties so intend.'" *Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*, 773 F.3d 58, 64 (8th Cir. 2014) (quoting *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 117 (2011)). "Proving third-party beneficiary status requires that the contract terms clearly evidence[ ] an intent to permit enforcement by the third party in question." *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020) (quotations omitted). "[I]ndividual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* (quotations omitted); *see also Hyland*, 2019 WL 2918238, at *8 (same); *Hillside Metro Assoc.,* 747 F.3d at 49 (same).

On its face, the Contract does not provide any third party beneficiary rights for borrowers. In contrast, the Contract does include express third party rights with respect to certain intellectual property issues. *See* **Ex. 1**, at 7 (Paragraph B.9(c)). By granting third party beneficiary rights in some limited cases, the Contract, by implication, excludes any other third party beneficiary rights, such as those claimed by Plaintiffs here. *See Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020).

Federal courts have repeatedly held that student loan borrowers such as Plaintiffs are not third party beneficiaries of the USDOE's loan servicing contracts with servicers such as MOHELA, including in cases concerning the PSLF Program, because:

- the contracts contained no language evidencing an intent to make student loan borrowers third party beneficiaries with rights of enforcement; and

- the HEA provides no private right of action and empowers only the Secretary of Education to enforce it.

*See Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275, at *2-3 (D.N.J. Apr. 14, 2022); *Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175, at *11 (E.D.N.Y. Dec. 4, 2020); *Travis*, 460 F. Supp. 3d at

284; *Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798, at *8 (N.D. Ga. Mar. 16, 2020); *Winebarger*, 411 F. Supp. 3d at 1092; *Hyland* 2019 WL 2918238, at *8. The Court should follow these decisions, reject Plaintiffs' third party beneficiary theory, and dismiss Count 4.

> **b.**   **Even if Plaintiffs were third party beneficiaries of the Contract, they fail to identify any provision of the Contract that MOHELA breached.**

Additionally, Plaintiffs' contract claim fails because they have not alleged that MOHELA breached any specific provision of the Contract. *Wade*, 2022 WL 1115275, at *3; *Travis*, 460 F. Supp. 3d at 284-85. As this Court previously stated:

> A plaintiff does not get to wait until discovery to identify what promises the defendant has breached .... The complaint must, at minimum, cite the contractual provision allegedly violated. Vague references to unspecified "agreements" are insufficient to state a claim for breach of contract.

*AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693, 703 (E.D. Mo. 2023) (internal quotations and citations omitted).

Plaintiffs speculate that the Contract requires MOHELA to "timely process[ ] PSLF applications and timely render[ ] decisions on the PSLF applications." Comp. ¶ 166. But neither the Contract nor federal law imposes any such obligation. The Contract does ***not*** set any specific deadline for MOHELA to process Plaintiffs' PSLF applications. Thus, Plaintiffs fail to state a cognizable claim for breach of contract, and Count 4 must be dismissed.

**8.**   **Plaintiffs' claims for breach of fiduciary duty (Count 5), negligence (Count 6), and accounting (Count 7) fail because MOHELA does not have any fiduciary duty or duty of care to Plaintiffs.**

In Count 5, Plaintiffs purport to assert a claim against MOHELA for breach of fiduciary duty. They claim that MOHELA owes them a fiduciary duty because it is the servicer of their student loans and handles PSLF applications. Compl. ¶ 171.  In Count 6, Plaintiffs purport to assert

a claim against MOHELA for negligence, which essentially mirrors their fiduciary duty claim (Count 5). They allege that "MOHELA's duties of care arose from the special relationship between Plaintiffs … and MOHELA" and "MOHELA acted as a fiduciary to Plaintiffs … and owed them a duty to exercise reasonable care, skill, and ability in processing and reviewing PSLF applications." Compl. ¶ 178.  In Count 7, Plaintiffs purport to assert a claim for accounting based on their fiduciary duty claim (Count 5). They allege that "a fiduciary relationship exists between Plaintiffs … and MOHELA related to Plaintiffs' … student loans of which MOHELA is currently as [sic] the servicer." Compl. ¶ 187.

These three claims are legally deficient and should be dismissed because, as a matter of law, MOHELA does not have any fiduciary duty or duty of care to Plaintiffs in servicing their student loans or processing PSLF applications. This is because MOHELA acts on behalf of the USDOE (pursuant to the Contract), not the borrowers, in servicing student loans and processing PSLF applications.

"To prove a breach of fiduciary duty …, a plaintiff must establish, among other elements, that a fiduciary duty existed and was breached." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 894 (8th Cir. 2014). A claim for an accounting likewise requires the existence of a fiduciary duty. *See Burshteyn v. Cmty. Hous. Ass'n, Inc.*, No. 4:19-CV-00830-SRC, 2020 WL 529308, at *12–13 (E.D. Mo. Feb. 3, 2020).

In general, a lender (*e.g.*, USDOE) and its loan servicer (*e.g.*, MOHELA) do not owe a fiduciary duty or any tort duty of care to borrowers (*e.g.*, Plaintiffs). *See UT Commc'ns Credit Corp. v. Resort Dev., Inc.*, 861 S.W.2d 699, 710 (Mo. Ct. App. 1993) ("As a matter of law, absent other evidence of a fiduciary relationship, there is no such relationship between a bank as lender and its customer as borrower."); *Wivell*, 773 F.3d at 900 ("Because Missouri courts have not

recognized a tort duty arising from the contractual relationship between a lender and borrower, the Wivells fail to state a plausible negligence claim against Wells Fargo."); *Shaner v. Sys. Integrators, Inc.*, 63 S.W.3d 674, 678 (Mo. Ct. App. 2001) ("[T]he existence of such a debtor-creditor relationship does not establish the requisite fiduciary relationship to support an equitable action for an accounting."). Consequently, because there is no such duty, federal courts have repeatedly dismissed claims by borrowers against federal student loan servicers such as MOHELA for breach of fiduciary duty, negligence, and accounting. *Hyland*, 2019 WL 2918238, at *11; *Winebarger*, 411 F. Supp. 3d at 1091-92; *Love*, 2020 WL 1545798, at *6-7. The Court should do the same.

**9.     Plaintiffs' unjust enrichment claim (Count 8) fails because they have not conferred any benefit on MOHELA in that the USDOE, not Plaintiffs, pays MOHELA for servicing Plaintiffs' student loans.**

Plaintiffs purport to assert a claim against MOHELA for unjust enrichment, but their claim is legally insufficient and ripe for dismissal because Plaintiffs fail to allege (and cannot allege) that *they* conferred any benefit on MOHELA.

"[A] claim for unjust enrichment requires the plaintiff to plead and prove three elements, a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of that benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 830–31 (8th Cir. 2023) (quotation omitted). "[T]o state a claim for unjust enrichment, a plaintiff must allege that a benefit was conferred on the defendant by that particular plaintiff." *LifeScience Techs., LLC v. Mercy Health*, 632 F. Supp. 3d 949, 960 (E.D. Mo. 2022).

Plaintiffs allege that MOHELA "has profited and benefited *from the service [sic] of loans* that, if it had timely processed and forgiven the loan forgiveness applications, should have been forgiven." Compl. ¶ 194 (emphasis added). In other words, Plaintiffs complain that MOHELA has

continued to receive servicing fees for their loans, which, according to Plaintiffs, should have been discharged under the PSLF Program.

Plaintiffs' unjust enrichment claim is deficient because the USDOE, not Plaintiffs, pays MOHELA for servicing student loans, including Plaintiffs' student loans. Thus, Plaintiffs have not conferred any benefit on MOHELA. For this reason, other courts have rejected similar unjust enrichment claims by borrowers such as Plaintiffs against federal student loan servicers like MOHELA. *See Hyland*, 2019 WL 2918238, at *14; *Nigro v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02000, 2020 WL 5369980, at *9 (M.D. Pa. Sept. 8, 2020). The Court should do the same here and dismiss Count 8.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint.

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/ Matthew D. Guletz*
    William R. Bay, #26977(MO)
    Jeffrey R. Fink, #44963(MO)
    Matthew D. Guletz, #57410(MO)
    One U.S. Bank Plaza, Suite 2700
    St. Louis, Missouri 63101
    (314) 552-6000 (telephone)
    (314) 552-7000 (facsimile)
    wbay@thompsoncoburn.com
    jfink@thompsoncoburn.com
    mguletz@thompsoncoburn.com

    Attorneys for Defendant MOHELA