**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JENNIFER JOY and MISTY THOMAS, on behalf of themselves and all others similarly situated, | Case No.: 4:23-cv-01590-SEP |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI d/b/a MOHELA, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

    1.   The Eleventh Amendment does not bar this case ............................................... 5

    2.   MOHELA is not entitled to sovereign immunity for any claim ........................ 8

    3.   The HEA does not preempt Plaintiffs' state statutory and common law claims .............. 11

    4.   MOHELA's conduct violates the Colorado Student Loan Equity Act (the "Act") .......... 15

    5.   MOHELA's conduct violates the Florida Deceptive and Unfair Trade Practices Act ..... 16

    6.   Plaintiffs' breach of contract claim is properly pled. ........................................ 17

    7.   The breach of fiduciary duty, negligence, and accounting claims are properly pled ....... 23

    8.   Plaintiffs' unjust enrichment claim is properly pled. ........................................ 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014) ................................ 16

*Ansanelli v. JP Morgan Chase Bank, N.A.*, No. 10-03892, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) ................................................................................................................. 23

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................... 4, 5

*Ballard v. Navient Corp.*, No. 3:18-CV-121, 2021 WL 1899874, at *10 (M.D. Pa. Mar. 31, 2021) ....................................................................................................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...................................................... 5

*Berman v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:21CV63, 2022 WL 767530, at *1 (M.D.N.C. Mar. 14, 2022) ............................................................................ 14

*Biden v. Nebraska*, 143 S.Ct. 2335 (2023) ................................................................. 5, 8

*Boyd v. Busey Bank*, No. 4:21-CV-01481-SEP, 2022 WL 3355736, at *1 (E.D. Mo. Aug. 15, 2022) ............................................................................................................ 25

*Carr v. Oklahoma Student Loan Auth.*, No. CIV-23-99-R, 2023 WL 6929853, at *5 (W.D. Okla. Oct. 19, 2023) ................................................................................................. 19

*Castro v. Kentucky Higher Educ. Student Loan Corp.*, No. 16-24690, 2017 WL 588379, at *1, 9 (S.D. Fla. Feb. 14, 2017) ................................................................................ 10

*Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010) ................................................... 14

*Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1325 (M.D. Fla. 2018) ................. 23, 24, 25

*Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-cv-00083, 2021 WL 3206691 (E.D. Mo. July 29, 2021) ............................................................................................... 5, 6, 7

*Estes as Next Friend for Doe v. Bd. of Trustees of Missouri Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 692 (Mo. Ct. App. 2021) ................................................................... 10

*Flexfab LLC v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005) ............................... 18

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ................................................................... 25

*Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *9 (M.D. Tenn. July 12, 2016) .......................................................................... 10

*Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010) ................................................................................................. 23

*George W. v. U.S. Dept. of Educ.*, 149 F. Supp. 2d 1195, 1208 (E.D. Cal., 2000) .................... 11

*Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 20 (May 9, 2022) ........................ 22

*Hillside Metro Assocs. v. JPMorgan Chase Bank*, 747 F.3d 44, 49 (2d Cir. 2014) .................... 21

*Hyland v. Navient Corp.*, No. 18-9031, 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019).. 21, 25

*Johansson v. Nelnet, Inc.*, No. 4:20-CV-3069, 2021 WL 1169409, at *8 (D. Neb. Mar. 26, 2021)
.................................................................................................................................................. 19

*Lewis v. MHM Health Pros., LLC*, No. 4:22-CV-00228-SEP, 2023 WL 6389088, at *2 (E.D. Mo.
Sept. 30, 2023) ................................................................................................... 4, 11, 16

*Mahdavieh v. Suntrust Mortg., Inc.*, No. 13-62801, 2014 WL 1365425, at *5 (S.D. Fla. Apr. 7,
2014) ............................................................................................................................... 24

*Manetta v. Navient Corp.*, No. CV 20-7712(SDW)(LDW), 2021 WL 2886115, at *5 (D.N.J. July
8, 2021) ........................................................................................................................... 17

*Martorella v. Deutsche Bank National Trust Co.*, 931 F. Supp. 2d 1218 (S.D. Fla. 2013).......... 17

Mo. Rev. Stat. §§ 173.360 ........................................................................................................... 6

*MSPA Claims 1, LLC v. Halifax Health, Inc*, 295 F. Supp. 3d 1335, 1341 (M.D. Fla. 2018) ..... 17

*Nat'l Sur. Corp. v. United States*, 31 Fed. Cl. 565, 575 (1994) .................................................. 21

*Neagle v. Goldman Sachs Grp., Inc*, No. 6:18-CV-00754, 2019 WL 1102199, at *1 (D. Or. Mar.
1, 2019) ........................................................................................................................... 10

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 651 (7th Cir. 2019).................... 14

*Nigro v. Pennsylvania Higher Educ. Assistance Agency*, No. 19-02000, 2020 WL 5369980, at *9
(M.D. Pa. Sept. 8, 2020) ................................................................................................. 25

*Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1020-21 (D. Neb. 2019)........................ 13, 18, 19, 20

*Pellegrino v. Equifax Info. Servs., LLC*, No. 23-cv-1166, 2024 WL 37062, at *5 (E.D. Va. Jan. 2,
2024) .......................................................................................................................... 6, 8, 9

*Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 533 (M.D. Pa 2018), *aff'd* 967 F.3d 273 (3d
Cir. 2020) ........................................................................................................................ 13

*Pennsylvania v. Navient Corp.*, 967 F.3d 273, 277 (3d Cir. 2020)............................................. 14

*Perkins v. Equifax Info. Servs., LLC*, No. 19-1281, 2020 WL 13120600, at *4 (W.D. Tex. May 1,
2020) ................................................................................................................................. 7

*Perkins*, 2020 WL 13120600, at *5 ............................................................................................. 9

*Pretka v. Kolter City Plaza II Inc.*, No. 09-80706, 2011 WL 841513, at *6 (S.D. Fla. Mar. 7,
2011) ................................................................................................................................ 22

*Pudic v. Dep't Stores Nat'l Bank*, No. 4:20-CV-01456-SEP, 2021 WL 3525175, at *4 (E.D. Mo. Aug. 11, 2021) ............................................................................................................... 12

*Raimo v. Washington Univ. in St. Louis*, No. 4:20-CV-00634-SEP, 2022 WL 796239, at *12 (E.D. Mo. Mar. 16, 2022) ........................................................................................... 25

*Regents of the Univ. of California v. Doe*, 519 U.S. 425, 430 (1997) ........................................... 7

*Schuerman v. United States*, 30 Fed. Cl. 420, 432 (1994) ......................................................... 21

*Singer v. W. Publ'g Corp.*, 310 F. Supp. 2d 1246, 1253 (S.D. Fla. 2004).................................... 22

*Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 919-20 (Mo. 1992) ......................................... 9, 10

*State of Mont. v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997).................................. 18, 21

*Thomas v. St. Louis Bd. Of Police Com'rs.*, 447 F.3d 1082, 1084 (8th Cir. 2006) ...................... 6

*Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) ...................................................... 4

*William B. Tanner Co. v. Waseca-Owatonna Broad.*, 549 F. Supp. 411,  (D. Minn. 1982) .. 12, 22

**Statutes**

Fla. Stat. § 501.203 (8)............................................................................................................ 17

Mo. Rev. Stat § 173.385 ............................................................................................................. 6

Mo. Rev. Stat § 173.425 ............................................................................................................. 7

Mo. Rev. Stat. § 173.410 ............................................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 4

Fed. R. Civ. P. 15(a) ............................................................................................................... 25

Fed. R. Civ. P. 8(a)(2)............................................................................................................... 4

**Treatises**

Restatement (Second) of Contracts § 313................................................................................ 25

Restatement (Second) of Contracts § 303................................................................................ 25

Restatement (Second) of Contracts § 302................................................................................ 21

**Regulations**

34 CFR § 685.219 .................................................................................................................... 1

86 FR 44277-01 ..................................................................................................................... 13

86 FR 44278........................................................................................................................... 13

86 FR 44280........................................................................................................................... 13

## INTRODUCTION

This case relates to the Higher Education Loan Authority of the State of Missouri's ("MOHELA") complete and utter failure to process and render decisions on Public Service Loan Forgiveness Program ("PSLF") applications. Approximately **500 days** after Plaintiffs' PSLF applications, MOHELA has still not issued a decision. PSLF requires loan forgiveness as long as the applicant has made 120 loan payments while working for a qualifying public service employer. In the event of a denied application, applicants are entitled to a basis for the denial and have a period to request consideration of the denial. 34 C.F.R. § 685.219(g). MOHELA's failure to process and render decisions on PSLF applications has harmed Plaintiffs and the putative class because MOHELA's failures have required them to make payments on loans that should be forgiven, and a substantial debt still appears on their credit reports.

MOHELA's motion to dismiss should be denied. MOHELA is not entitled to sovereign immunity under the Eleventh Amendment or under Missouri law because it is independent from Missouri. The Higher Education Act of 1965 ("HEA") does not preempt Plaintiffs' claims because Plaintiffs do not seek to impose new regulatory requirements on MOHELA. Plaintiffs allege that MOHELA's conduct violates the Colorado Student Loan Equity Act and the Florida Deceptive and Unfair Trade Practices Act because MOHELA's conduct is unfair, deceptive, and MOHELA has repeatedly misrepresented the status of Plaintiffs' PSLF applications and acted unfairly and deceptively by refusing to process their applications. Plaintiffs are intended third-party beneficiaries of MOHELA's contract with the Department of Education and allege a breach of contract. Plaintiffs' breach of fiduciary duty, negligence, and accounting claims are properly pled because MOHELA breached its duty of care to Plaintiffs. Finally, Plaintiffs' unjust enrichment claim is proper because the payments they made unjustly enriched MOHELA.

1

## FACTUAL BACKGROUND

### 1. The PSLF Program and MOHELA's Role as Servicer

The PSLF program, part of the College Cost Reduction Access Act, was intended to encourage students to enter public service careers. Dkt. 1, ¶ 35. To be eligible for forgiveness, borrowers must make 120 qualifying monthly payments, and the payments must be made while working full-time for an eligible employer. ¶ 36. Eligible employers include governmental or not-for-profit organizations. ¶ 39. To receive forgiveness, borrowers must complete and submit a form to MOHELA. ¶ 43. As the Department of Education ("DOE") states, "the PSLF servicer [MOHELA] will confirm your eligibility and forgive your remaining balance." *Id.*

MOHELA took over as the servicer responsible for the PSLF program during the summer of 2022. ¶ 5. In exchange for servicing borrower accounts, MOHELA is paid a fee per active student loan account. ¶¶ 53, 81. The addition of PSLF loans to its portfolio of loans was lucrative, and contributed to its net servicing fee revenue of $171.7 million in 2023. ¶ 54. As part of its servicing of student loans, MOHELA must answer questions about the status of accounts, provide repayment options, and explain the benefits available to borrowers. ¶ 55. In the case of PSLF, it also entails assisting borrowers with the loan forgiveness process. *Id.*

### 2. MOHELA's Inaction Prompts Congressional Scrutiny

Although the PSLF program was transferred to MOHELA in the summer of 2022, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act suspended the collection of federally-held student loan debt and stopped interest from accruing. ¶ 45. Any payments that would have come due, but did not because of the forbearance period, count toward the 120 qualifying payments under PSLF. *Id.* In other words, MOHELA took over as servicer but did not have to collect payments, allowing it to collect substantial service fees while loan payments were

2

otherwise paused. *Id.*; Dkt. 13-2, at 19. While payments were paused, however, borrowers were eligible to submit applications for loan forgiveness under PSLF. ¶ 43.

Starting in the summer of 2021, MOHELA and other student loan servicers were the targets of congressional inquiry when lawmakers sent out letters requesting information relating to issues that constituents were experiencing. ¶ 61. Notably, the letters recounted that borrowers were waiting up to *nine hours* to talk to their servicer about the PSLF program in 2022. ¶ 78. The letters also expressed concern over MOHELA's customer service representatives' training and expertise. ¶ 79. Among other things, MOHELA was encouraged to take a "coordinated and proactive approach" to these issues. ¶ 64. The letters are discussed in detail in the Complaint. ¶¶ 59-99.

The Department of Education also published an internal memorandum that "identified several cohorts of borrowers returning to repayment who may have been harmed by servicing errors." ¶ 100. It highlighted dangers that may adversely impact borrowers' ability to receive PSLF payment credit. ¶ 103. It also noted that borrowers harmed due to servicing issues may file lawsuits against their loan servicers or the Department of Education. ¶ 107. It went on to explain that "servicing errors potentially violate several federal and state consumer protection laws" and that these servicing errors may cause federal and state regulators to find "violations of their consumer protection laws and require servicers to remediate these problems experienced by borrowers themselves and impose monetary fines against the servicers." *Id.*

### 3. Plaintiffs Joy and Thomas

Plaintiff Joy is a citizen of Colorado and had her student loans transferred to MOHELA in approximately October of 2022. ¶¶ 14-15. Plaintiff Joy has made over 120 qualifying payments and is eligible for student loan forgiveness. ¶ 16. In an attempt to have her loans forgiven, Plaintiff Joy has submitted numerous PSLF applications to MOHELA, including in October 2022,

November 2022, and August 2023. ¶ 17. MOHELA has not rendered a decision on any of her applications, even though the first application was submitted ***approximately 500 days ago***. ¶ 18. As of December 11, 2023, Plaintiff Joy's payments came due for both October and November of 2023. ¶ 19. Plaintiff alleges she suffered losses as a result of MOHELA's conduct, including the out-of-pocket payments for loans that should already have been forgiven. ¶ 21.

Plaintiff Thomas is a citizen of Florida and had her student loans transferred to MOHELA in approximately July of 2022. ¶¶ 22-23. Plaintiff Thomas has made over 120 qualifying payments and is eligible for student loan forgiveness. ¶ 24. She submitted PSLF applications to MOHELA in August 2022, September 2022, and August 2023. ¶ 25. MOHELA has not rendered a decision on any of her applications, even though the first application was submitted ***approximately 550 days ago***. ¶ 26. As of December 11, 2023, Plaintiff Thomas' payments came due for November of 2023. ¶ 19. Plaintiff alleges she suffered losses as a result of MOHELA's conduct, including the out-of-pocket payments for loans that should already have been forgiven. ¶ 29.

## LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement . . . showing that the pleader is entitled to relief." To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court "must liberally construe a complaint in favor of the plaintiff." *Lewis v. MHM Health Pros., LLC*, No. 4:22-CV-00228-SEP, 2023 WL 6389088, at *2 (E.D. Mo. Sept. 30, 2023) (citation omitted). The plaintiff's allegations must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012)). The court must also "grant all reasonable inferences in favor of the nonmoving party."

*Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court must accept all well-pled allegations as true, but is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### 1.  The Eleventh Amendment does not bar this case.

Relying on a misreading of the Supreme Court's recent decision in *Biden v. Nebraska*, 143 S.Ct. 2335 (2023), MOHELA argues that it is entitled to immunity from suit under the Eleventh Amendment of the United States Constitution. Dkt. 13 ("Mot."), 5-7. *Biden v. Nebraska*, however, did not relate to immunity under the Eleventh Amendment, and instead addressed the State of Missouri's standing to bring a lawsuit based on the harm allegedly suffered by the State of Missouri. Moreover, numerous courts, including this one, have rejected both MOHELA's claim of immunity under the Eleventh Amendment and MOHELA's invocation of *Biden v. Nebraska*. MOHELA's request for immunity under the Eleventh Amendment should be rejected.

As MOHELA concedes, Judge Sippel recently held that MOHELA is not entitled to sovereign immunity under the Eleventh Amendment. *See Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-cv-00083, 2021 WL 3206691 (E.D. Mo. July 29, 2021). In *Dykes*, a plaintiff sued MOHELA for negligence per se, negligence misrepresentation, and equitable estoppel and alleged that MOHELA misrepresented his student loan repayment options. *Id.* at *1. MOHELA contended it was entitled to Eleventh Amendment sovereign immunity "as an arm of the state." *Id.* at *2. The relevant factors for determining whether an entity is an "arm of the state" are "the agency's degree of autonomy and control over its own affairs and, more importantly, whether a money judgment

against the agency will be paid with state funds." *Id.* (citing *Thomas v. St. Louis Bd. Of Police Com'rs.*, 447 F.3d 1082, 1084 (8th Cir. 2006)).

The first factor, MOHELA's degree of autonomy and control over its own affairs, weighs against MOHELA. Judge Sippel observed that while MOHELA was established by statute in 1981 as a "public instrumentality and body corporate," the Missouri legislature gave MOHELA the authority "to sue and be sued" as well as "to acquire, hold and dispose of personal property," which gives MOHELA "operational dependence" from the State of Missouri. *Id.* (citing Mo. Rev. Stat. §§ 173.360, 173.385. These facts weigh against MOHELA's claim of immunity.

Judge Sippel went on to find that other portions of the enabling legislation "weigh[ed] slightly in MOHELA's favor," including that the statute authorizes the governor to appoint five members of the seven member board, that MOHELA is required to provide a yearly report to the Missouri Department of Education, limits MOHELA's ability to sell certain loans without approval from the Department, and imposes limitations on investments. *Id.* at *3. Respectfully, the plaintiffs in *Dykes* failed to raise other facts that may have altered Judge Sippel's analysis of this first factor. For instance, while MOHELA's board members are appointed by the Governor, they are appointed for 5-year terms, which exceed the 4-year term of the Governor, demonstrating an intent by the legislature to insulate the board. *See, e.g.*, *Pellegrino v. Equifax Info. Servs., LLC*, No. 23-cv-1166, 2024 WL 37062, at *5 (E.D. Va. Jan. 2, 2024)). Missouri has no veto power over MOHELA's regular activities, and requires "nothing more than filing annual reports, a requirement that applies to any stock corporation." *Id.* at *6. In addition, the Missouri legislature granted MOHELA expansive "authority" and "powers" under Mo. Rev. Stat § 173.385, including:

> "[t]o sue and be sued and to prosecute and defend, at law or in equity" without any reference to involvement or approval needed from the state attorney general, RSMo. § 173.385.1(3);9 to issue bonds and purchase student loan notes, RSMo. § 173.385.1(6); . . .; to collect servicing fees, and use them to cover its own expenses,

RSMo. § 173.385.1(12); to invest surplus funds in, at its own discretion, banks or government bonds, RSMo. § 173.385.1(13); "[t]o acquire, hold and dispose of personal property," RSMo. § 173.385. 1(14); and "[t]o enter into agreements or other transactions," RSMo. § 173.385.1(15).

This also includes total control "[t]o make and execute contracts, releases compromises, and other instruments necessary or convenient for the exercise of its powers, or to carry out its purpose" which includes the PSLF contract at the core of this litigation. *Id.* at § 173.385(11).

The second factor, whether a money judgment against MOHELA will be paid with state funds, weighs heavily against MOHELA. As the Supreme Court recognized, the question of whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 430 (1997). It concedes that "MOHELA, not the State, is legally liable for judgments against it." *Dykes*, 2021 WL 3206691 at *3; Mot., 7. As it did in *Dykes*, MOHELA claims that the State of Missouri "*may* be functionally liable for a judgment against MOHELA." Mot., 7 (emphasis added). This is not true, because MOHELA can "sue and be sued," and "[t]he state shall not be liable . . . for the performance of any pledge, mortgage, obligation, or agreement of any kind whatsoever which may be undertaken by the authority" and "[n]o breach of any such pledge, mortgage, obligation, or agreement may impose pecuniary liability upon the state or charge upon the general credit or taxing power of the state." Mo. Rev. Stat. §§ 173.385(3), 173.410. The Missouri legislature "intended to create a self-sustaining and financially independent agency." *Dykes*, 2021 WL 3206691 at *3; *see also Perkins v. Equifax Info. Servs., LLC*, No. 19-1281, 2020 WL 13120600, at *4 (W.D. Tex. May 1, 2020) (holding "the express financial segregation of MOHELA from any State funds, and the lack of any obligation for the State to pay MOHELA's debts, 'strongly' weigh against an application of sovereign immunity."); *see also*, Mo. Rev. Stat § 173.425 (its "assets . . . shall remain under the exclusive control and management of" MOHELA).

MOHELA provides no support for its contention that the State of Missouri may be "functionally liable" for a judgment against MOHELA, dooming its argument.

Finally, the Supreme Court's opinion in *Biden v. Nebraska* does not apply here. *Biden* addressed whether the State of Missouri (not MOHELA) had standing to oppose President Biden's student loan debt cancellation plan because it would have cost MOHELA loan servicing fees. *Biden*, 143 S.Ct. at 2366. The Supreme Court did not mention, let alone analyze, whether MOHELA was entitled to sovereign immunity. Moreover, the *Biden* opinion stated that "a public corporation can count as part of the State for some but not 'other purposes.'" *Id.* at 2368, n.3. Not only that, during oral argument, the United States Solicitor General stated that "[w]e don't think MOHELA actually qualifies as an arm of the state for sovereign immunity because of the differing 'critical factors' between an inquiry into standing versus sovereign immunity." *Pellegrino*, 2024 WL 37062, at *3 (quoting Transcript of Oral Argument at 68). As the *Pellegrino* court summarized, the Supreme Court in *Biden* found "a relationship" between Missouri and MOHELA sufficient to give Missouri standing, but noted sovereign immunity requires an analysis "into the extent of an entity's relationship with a state" which the Supreme Court did not analyze. *Id.*

**2. MOHELA is not entitled to sovereign immunity for any claim.**

Next, MOHELA claims that it is entitled to sovereign immunity "under Missouri law," which it contends bars all claims except for Plaintiffs' breach of contract claim. Mot., 7. In support of this argument, MOHELA relies on only one decision. As explained below, Plaintiffs respectfully submit that the analysis in *Dykes* court missed the mark, which is unsurprising since it appears that the *Dykes* plaintiffs did not oppose or respond substantively to the state sovereign immunity defense. *See* No. 4:21-CV-00083, Dkt. 14.

In order for sovereign immunity to apply, MOHELA must be considered a "public entity", by satisfying the following factors: (1) whether the entity is formed by the government itself or by voters; (2) whether the entity is controlled by and directly answerable to the government; and (3) whether the entity performs a service traditionally performed by government." *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 919-20 (Mo. 1992). An analysis of these factors demonstrates that MOHELA is not a public entity, just as it was not an arm of Missouri. *See* Section 1, *supra*. Since MOHELA was created by statute, Plaintiffs do not contest the first requirement.

The second requirement, whether the entity is controlled by and directly answerable to the government, weighs against MOHELA. This is "the most critical [factor]" in the analysis. *Stacy*, 836 S.W.2d at 919. In *Pellegrino*, the Eastern District of Virginia conducted an in-depth analysis of MOHELA's degree of autonomy from Missouri. 2024 WL 37062, at *6. It found that Missouri made MOHELA "a financially independent entity with expansive powers," which include:

> For example, in addition to providing that MOHELA has "perpetual succession as a body politic and corporate," RSMo. § 173.385.1(1), the Missouri legislature granted it the following authority: "[t]o sue and be sued and to prosecute and defend, at law or in equity" without any reference to involvement or approval needed from the state attorney general, RSMo. § 173.385.1(3); to issue bonds and purchase student loan notes, RSMo. § 173.385.1(6); "[t]o make and execute contracts, releases, compromises, and other instruments necessary or convenient for the exercise of its powers, or to carry out its purpose," RSMo. § 173.385.1(11); to collect servicing fees, and use them to cover its own expenses, RSMo. § 173.385.1(12); to invest surplus funds in, at its own discretion, banks or government bonds, RSMo. § 173.385.1(13); "[t]o acquire, hold and dispose of personal property," RSMo. § 173.385. 1(14); and "[t]o enter into agreements or other transactions," RSMo. § 173.385.1(15).

*Id.*. It also found that Missouri had "no veto power over MOHELA's regular activities," no "decision-making authority over MOHELA," and Missouri requires "nothing more than filing annual reports, a requirement that applies to any stock corporation." *Id.* at *7; *see also Perkins*, 2020 WL 13120600, at *5 ("MOHELA is given a great deal of autonomy by state statute").

The third requirement, whether the entity performs a service traditionally performed by the government, also weighs heavily against MOHELA. Plaintiffs can find no evidence (and MOHELA cites none) that holds student loan servicing is a service "traditionally performed by the government." Examples that have been found sufficient in other cases are the "provision of a criminal justice database," "metropolitan transportation," and "medical care." *Stacy*, 836 S.W.2d at 919; *Estes as Next Friend for Doe v. Bd. of Trustees of Missouri Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 692 (Mo. Ct. App. 2021) ("We are aware of no such service [providing optional liability insurance coverage to public entities] ever having been undertaken by our state government"). The other student loan servicers listed on the Department of Education's websites are private companies.[1] This is not surprising, as loan servicing has historically been performed by private entities, not the government. *Neagle v. Goldman Sachs Grp., Inc*, No. 6:18-CV-00754, 2019 WL 1102199, at *1 (D. Or. Mar. 1, 2019) ("Traditionally, banks serviced loans themselves and had a financial interest in the repayment of the loan."); *Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *9 (M.D. Tenn. July 12, 2016) ("It is in the business of making, buying, and collecting on student loans, allegedly including many that have no apparent connection to the Commonwealth other than the fact that KHESLC services them. KHESLC has offered no account of why it would be an affront to the dignity of the Commonwealth for the corporation to answer for actions taken pursuant to its participation in the interstate, commercial market for servicing and collecting student loan debt, just as any private competitors must."); *Castro v. Kentucky Higher Educ. Student Loan Corp.*, No. 16-24690, 2017 WL 588379, at *1, 9 (S.D. Fla. Feb. 14, 2017) (rejecting sovereign immunity defense and finding "student loan servicing company created by Kentucky's General Assembly" "performs a function

---

[1] Edfinancial, Aidvantage, Nelnet, ECSI, and Default Resolution Group are all private entities.

traditionally within the purview of *private corporations*, not the state") (emphasis added); *George W. v. U.S. Dept. of Educ.*, 149 F. Supp. 2d 1195, 1208 (E.D. Cal., 2000) ("Even if the activity is narrowed to the collection of federally-insured student loans, collection agencies hired by the federal government to collect on these loans do not perform a public function when assessing collection charges to the borrower."). MOHELA is not a public entity entitled to immunity.

### 3. The HEA does not preempt Plaintiffs' state statutory and common law claims.

MOHELA argues that the Higher Education Act of 1965 ("HEA") preempts Plaintiffs' state statutory and common law claims. Mot., 11-13. MOHELA's argument, however, is premised on a misunderstanding of Plaintiffs' allegations. Plaintiffs do not seek to impose new regulatory obligations on MOHELA. To the contrary, Plaintiffs seek to hold MOHELA accountable for its utter failure to comply with the terms of the PSLF program. ¶¶ 8-10, 115-116. The class they seek to represent includes "[a]ll persons in the United States who submitted applications for PSLF forgiveness to MOHELA that MOHELA has not yet processed and/or rendered a decision." ¶ 117. Put differently, Plaintiffs are not challenging the specific timeframes within which MOHELA is processing PSLF applications *because it is not processing them at all*. Plaintiff Joy applied for forgiveness in October of 2022, Plaintiff Thomas applied for forgiveness in August of 2022, and neither has received a decision from MOHELA a year and a half later. ¶¶ 17, 19.

MOHELA fails to cite, let alone analyze, the standard for preemption in the Eighth Circuit, or even state which type of preemption it contends applies. Mot., 11. As this Court previously summarized, "[p]reemption works like this: 'Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted.'" *Lewis*, 2023 WL 6389088, at *9. A conflict with federal law occurs when "compliance with both

federal and state regulations is a physical impossibility or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations and internal quotation omitted). When analyzing preemption, "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Id.* (quoting *Arizona v. U.S.*, 567 U.S. 387, 400 (2012)). "It is Defendants' burden to justify preemption." *Pudic v. Dep't Stores Nat'l Bank*, No. 4:20-CV-01456-SEP, 2021 WL 3525175, at *4 (E.D. Mo. Aug. 11, 2021) (citation omitted).

Plaintiffs' statutory claims are not preempted. The Colorado Student Loan Equity Act prohibits, *inter alia*, misleading borrowers, engaging in unfair practices by misrepresenting information in connection with the servicing of a student loan (including the terms and conditions of the loan and the borrower's obligations), obtaining property by misrepresentation, and failing to properly evaluate a borrower for a public service loan forgiveness program. ¶ 132. The Florida Deceptive and Unfair Trade Practices Act broadly prohibits unfair or deceptive acts. ¶ 143. MOHELA's failure to process their PSLF applications caused Plaintiffs' harm in violation of these statutes, as MOHELA has a financial incentive to continue servicing loans to generate fees which it would not receive if it forgave the loans. ¶¶ 133, 144. These statutes do not require MOHELA to process PSLF applications within a certain time, or conflict with the HEA. Plaintiffs allege that MOHELA's failure to process their applications in the *500 days* they have been pending is a violation of these statutes, which is a question of fact. *William B. Tanner Co. v. Waseca-Owatonna Broad.*, 549 F. Supp. 411, 414 n.5 (D. Minn. 1982).

Recent guidance from the Department of Education ("DOE") further undercuts MOHELA's preemption argument as to Plaintiffs' statutory claims. 86 FR 44277-01.[2] There, the DOE stated it "views the States as important partners in ensuring the protection of student loan borrowers and the proper servicing of Federal student loans." *Id.* at 44278. It further observed that these statutes were created "under their general police powers for the purpose of protecting their citizens" which is "a zone in which preemption is at its weakest." *Id.* The DOE further observed that "the HEA places no emphasis on maintaining uniformity in Federal student loan servicing" and, even if it did, it is "not harmed by prohibiting unfair or deceptive conduct in operation of the program that is not explicitly permitted by the HEA." *Id.* at 44280 (citing *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 533 (M.D. Pa 2018), *aff'd* 967 F.3d 273 (3d Cir. 2020)).

Similarly, Plaintiffs' common law claims for breach of fiduciary duty, negligence, accounting, and unjust enrichment are not preempted. These common law claims also seek to hold MOHELA accountable for its failure to comply with the terms of the PSLF program. ¶¶ 173, 177, 188, 195. None of these claims seek to impose any new obligations on MOHELA. *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1020-21 (D. Neb. 2019) (rejecting argument that HEA preempted negligence claim and stating "plaintiffs are not seeking to add to, or take away from, the disclosures the Higher Education Act requires a lender or loan servicer to make. Instead, the plaintiffs assert that negligent misrepresentations made by the defendants in the course of administering their loans caused damage."). In addition, Plaintiffs' payments have come due (nearly a year after their initial applications were submitted), and thus have been harmed by making payments on loans that should have been forgiven. ¶¶ 19, 27. MOHELA is contractually obligated to process and render decisions

---

[2] *Federal Preemption and Joint Federal-State Regulation and Oversight of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*.

on PSLF applications, which it has not done (¶¶ 18, 26), and it is obligated to refund any overpayments, which it also has not done. Dkt. 13-2, at 7.

The cases that MOHELA cites do not support a finding of preemption. *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 277 (3d Cir. 2020) (holding HEA "does not preempt [fraud] claims based on affirmative misrepresentations) (citing *Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010)). The remaining cases MOHELA relies on recognize that while uniformity may be desired in the method of establishing late fees, interest calculations, and repayment start dates, "[t]hat need does not extend to the claims [Plaintiff] asserts based on affirmative misrepresentations." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 651 (7th Cir. 2019).[3]

Finally, the Middle District of North Carolina rejected this exact argument in the context of the PSLF program. *See Berman v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:21CV63, 2022 WL 767530, at *1 (M.D.N.C. Mar. 14, 2022). On express preemption, the court found that "HEA's express preemption of 'disclosure requirements' refers to the HEA's requirements that certain information be communicated to borrowers during the various stages of a loan, as laid out in § 1083 of the statute. Whether a loan is eligible for forgiveness under PSLF is a required disclosure before disbursement but is not a required disclosure before or during repayment of the loan." (citations omitted). The court also found no implied preemption because, in light of the express preemption provisions (none of which apply here), "it is reasonable to presume that Congress did not intend to preempt state regulation of affirmative misrepresentations." *Id.* MOHELA's preemption argument should be rejected.

---

[3] *See also Navient*, 967 F.3d at 293 ("Allegations of affirmative misrepresentations and misconduct stand in stark contrast. There is no indication that Congress had the sweeping goal of regulating all misconduct that could possibly occur in student-loan financing and requiring uniformity of all claims tangentially related to the Education Act. '[S]tate law and federal law can exist in harmony' under the Education Act.").

**4.   MOHELA's conduct violates the Colorado Student Loan Equity Act (the "Act").**

MOHELA contends that the Act does not apply to Plaintiff Joy's claim regarding her application to forgive her *student loans* under PSLF. Mot., 13-14. MOHELA's argument, however, overlooks numerous sections of the Act that Plaintiff invokes.

The legislative declaration states that it promotes "meaningful access to federal affordable repayment *and loan forgiveness benefits*, quality customer service and fair treatment, reliable information about student loans and loan repayment options" and states it should be "liberally construed" to effectuate its intent to protect the health, welfare, safety, and public interest of Colorado. ¶ 129 (citation omitted) (emphasis added). Plaintiff Joy alleges that MOHELA violated at least 5 different sections of the Act: (a) to employ a scheme, a device, or artifice to defraud or mislead student loan borrowers; (b) engage in an unfair or deceptive practice toward any person or misrepresent or omit any material information, including misrepresenting the amount, nature, or terms of any payment due or claimed to be due, the terms and conditions of the loan, and the borrower's obligations under the loan; (c) obtaining property by fraud or misrepresentation; (d) misapplying payments; and, most importantly, (e) failing to properly evaluate a borrower for public service loan forgiveness before placing the borrower in forbearance or default.

MOHELA primarily attacks the last of these prohibitions, contending that "Plaintiff Joy does not, and cannot, allege that MOHELA has placed her in forbearance or default." Mot., 14. But even for this section, Plaintiff Joy received a letter from MOHELA a month after the complaint was filed indicating that she was delinquent on her payments.[4] Regarding the other sections, MOHELA is incorrect that all of Plaintiff's allegations of MOHELA's violations "derive from her allegation that MOHELA did not timely process and decide her PSLF application." Mot., 13.

---

[4] Should the Court require it, Plaintiffs are able to file a copy of the letter.

While that is certainly *part* of her allegations, she also alleges, *inter alia*, that MOHELA employed schemes to defraud and mislead her about the status of her loans and applications, and engaged in unfair practices by misrepresenting material information about her PSLF application. ¶¶ 134-137. Plaintiff Joy's well-pled allegations that MOHELA violated these additional sections of the Act cannot be credibly contested at the motion to dismiss stage. *Lewis*, 2023 WL 6389088, at *2.

Finally, MOHELA's reading of Section 5-20-108(2)(a) is plainly inconsistent with the Colorado legislature's instruction to "liberally construe" the Act's instruction to provide meaningful access to loan forgiveness benefits, as discussed above. Plaintiff Joy has written to MOHELA on numerous occasions. To the extent the Court is inclined to grant MOHELA's motion as to this section of the Act, Plaintiff Joy respectfully requests leave to amend to include the details of these communications, and MOHELA's failure to respond within 30 days.

5. **MOHELA's conduct violates the Florida Deceptive and Unfair Trade Practices Act.**

MOHELA argues that Plaintiff Thomas' claim under the FDUTPA should be dismissed because it does not apply "loan servicing and collection activity, such as MOHELA's servicing of Plaintiffs' student loans and processing of PSLF applications." Mot., 15. There are numerous cases applying FDUTPA to such conduct. The cases that MOHELA cites involve "loan collection activities" generally, which standing alone are not sufficient under the FDUTPA. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014).

When loan servicers engage in "unauthorized activities," they have been found to engage in "trade or commerce" under FDUTPA. *Id.* (denying motion to dismiss and observing "Plaintiffs specifically allege, first, that Nationstar assessed and sought to collect fees outside the scope of its legal entitlement, and more importantly, billed Plaintiffs for specific services which were unauthorized and which Nationstar never performed."); *Manetta v. Navient Corp.*, No. CV 20-

16

7712(SDW)(LDW), 2021 WL 2886115, at *5 (D.N.J. July 8, 2021) (observing "Plaintiffs allege . . . Defendants made a variety of misrepresentations to Plaintiffs who are consumer borrowers knowing they were false in order to gain greater profits. . . [and] that they were damaged because those misrepresentations and/or omissions led to Plaintiffs paying more in interest over the life of the loan than was contractually required" and denying motion to dismiss).[5] MOHELA's activities, including ignoring its obligation to process Plaintiff Thomas' PSLF application for approximately 550 days and continuing to collect loan payments even though her loans should have been forgiven renders this case closer to *Alhassid* than the cases MOHELA cites. Indeed, Plaintiff Thomas alleges that MOHELA is not "providing" the required loan forgiveness. Fla. Stat. § 501.203(8).

Plaintiff Thomas also alleges that MOHELA violated the FDUTPA because it failed to process her application and caused her harm by collecting payments from her and generating revenue from her loans when they should have been forgiven. ¶ 144. She alleges unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts for the same reasons as set forth in Section 4, *supra*, such as misleading her about the status of her loans and applications and misrepresenting material information about her PSLF application. ¶¶ 145-147.

**6. Plaintiffs' breach of contract claim is properly pled.**

A. Plaintiffs are third-party beneficiaries of the Contract

MOHELA argues that Plaintiffs are not third-party beneficiaries of its contract with the Department of Education, through which it services Plaintiffs' loans. Mot., 19-20. MOHELA's

---

[5] *See also Martorella v. Deutsche Bank National Trust Co.*, 931 F. Supp. 2d 1218 (S.D. Fla. 2013) (holding FDUTPA claim against mortgage lender and servicer fell "squarely within the statute's broad definition of 'trade or commerce'" where the plaintiff alleged "the lenders/servicers have charged excessive and/or unreasonable amounts for force-placed insurance, for which they were paid commissions or other remunerations"); *MSPA Claims 1, LLC v. Halifax Health, Inc*, 295 F. Supp. 3d 1335, 1341 (M.D. Fla. 2018) (finding improper billing practices and double billing fall within "trade or commerce" definition).

argument is based on other parts of the contract providing "third party beneficiary rights" for "certain intellectual property issues" and because other court decisions that have recognized "student loan borrowers such as Plaintiffs are not third party beneficiaries of the USDOE's loan servicing contracts." Mot., 19. Both arguments are unpersuasive.

In Section 302(1), the Restatement (Second) of Contracts states that "a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance." In order to determine whether a beneficiary is an *intended* beneficiary, courts look to the intention of the parties. *Flexfab LLC v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005) ("The intent of the parties to the contract is therefore the cornerstone of a claim for third-party beneficiary status."). One way to evaluate the intention of the parties is to assess whether "the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him." *State of Mont. v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997). This includes individuals identified in the contract, but can also include "a class clearly intended to be benefitted" by the contract. *Id.*; *see also Olsen*, 392 F. Supp. 3d at 1014.

The Contract terms state that MOHELA will comply with all federal statutes and regulations regarding the service of student loans. Dkt. 13-1, at 31 ("The Contractor(s) will be responsible for maintaining a full understanding of all federal and state laws and regulations and FSA requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur."). The Statement of Objections in the Contract further states that "[Federal Student Aid]'s core mission is to ensure that all eligible individuals benefit from federal financial assistance – grants, loans and work-study programs – for education beyond high school." *Id.* at 30.

18

The Contract specifically lists the HEA and various regulations related to student loans that it states MOHELA must comply with. *Id.* at 33. Numerous district courts have found this sufficient to establish borrowers are third-party beneficiaries. *Olsen*, 392 F. Supp. 3d at 1015 ("The Court finds that the plaintiffs have sufficiently alleged facts showing that they are third-party beneficiaries of the servicing contract between the Department of Education and the defendants"); *Johansson v. Nelnet, Inc.*, No. 4:20-CV-3069, 2021 WL 1169409, at *8 (D. Neb. Mar. 26, 2021) ("The Court finds that the plaintiffs have sufficiently alleged facts showing that their interests, as borrowers experiencing a partial financial hardship, were specifically contemplated by the Department in promulgating the relevant regulations, and specifically contemplated when these same Department regulations were included by reference in the Department's serving contract with the defendants."); *Ballard v. Navient Corp.*, No. 3:18-CV-121, 2021 WL 1899874, at *10 (M.D. Pa. Mar. 31, 2021), *report and recommendation adopted*, No. CV 3:18-121, 2021 WL 1660843 (M.D. Pa. Apr. 28, 2021) (same); *see also Carr v. Oklahoma Student Loan Auth.*, No. CIV-23-99-R, 2023 WL 6929853, at *5 (W.D. Okla. Oct. 19, 2023) (finding plaintiffs plausibly alleged they were third-party beneficiaries of contract between student loan servicer and government).

*Olsen* is particularly instructive, as the plaintiffs alleged that a student loan servicer failed to provide them with income-driven payment ("IDR") plan protections, including maintaining them on IDR while a renewal application was pending and maintaining their monthly payment until the request was processed. *Olsen*, 392 F. Supp. 3d at 1012-13. In rejecting the motion to dismiss the contract claim, the court held the plaintiffs alleged they were third-party beneficiaries:

> The amended complaint alleges that the servicing contract requires the defendants to comply with the regulations governing the Department of Education's income-based repayment plan program found at 34 C.F.R. § 685.221. . . The purpose for this program is to give a borrower experiencing a partial financial hardship the opportunity to pay a portion of their student loan debt, and with successful participation in a plan, qualify for loan forgiveness. The plaintiffs plausibly allege

facts showing that the servicing contract, by reference to the relevant federal regulations, contemplated that borrowers, like the plaintiffs, may experience financial hardship. To address that likelihood, a program was devised to specifically benefit such borrowers by providing an affordable loan repayment plan along with possible debt forgiveness upon successful completion of the repayment plan. The Court finds that the plaintiffs have sufficiently alleged facts showing that their interests, as financially distressed borrowers, were contemplated and the contract provision allowing for affordable repayment plans was made for them as well as other similarly situated financially distressed borrowers. The Court finds that the plaintiffs have sufficiently alleged facts showing that they are third-party beneficiaries of the servicing contract between the Department of Education and the defendants[.]

*Id.* at 1014-15 (internal cites omitted).

Here, the Contract also establishes that Plaintiffs are third-party beneficiaries. The Amendment to the Contract, attached as Exhibit 2 to MOHELA's motion, states that it is intended to "incorporate Public Service Loan Forgiveness (PSLF) requirements," which includes over 5 pages of PSLF-specific tasks that MOHELA must perform to the benefit of borrowers.[6] Dkt. 13-2, at 4-9. Perhaps most importantly, it states that MOHELA "shall, upon receipt of a forgiveness request, determine if the borrower is eligible for forgiveness/discharge." *Id.* at 6. If the borrower is not eligible, MOHELA must "notify the borrower per PSLF communications requirements" and if they are eligible, they must request government approval to continue with the discharge." *Id.*

---

[6] These tasks include the following: "review the forgiveness application provided and if the borrower is not eligible for forgiveness/discharge, notify the borrower per PSLF communications requirements," and an obligation to "resolve and respond to all disputes with resolution within 14 calendar days from receipt," "perform a 'Monthly PSLF Review' for every PSLF enrolled borrower each month," allow the borrower to request MOHELA provide "additional details on why [a payment] does not qualify for PSLF" including appealing it for additional review, any disputes should be reviewed by "a highly trained representative" and the "borrower should receive a response as needed to respond to each issuer raised in the dispute," that MOHELA "shall accept and review borrower employment information for PSLF" and it also instructs MOHELA to take active steps to review and approve employer eligibility for PSLF, including by instructing it to "log into the PSLF Employer Database Search function to evaluate the employer eligibility and borrower period of employment." *Id.* at 4-8.

For any dispute with borrowers as to eligibility for forgiveness, MOHELA "shall resolve and respond to all disputes with resolution within 14 calendar days from receipt." *Id.* at 7.

MOHELA's cases focus their inquiry on Section 313 of the Restatement. *See  Hyland v. Navient Corp.*, No. 18-9031, 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019) (citing *Hillside Metro Assocs. v. JPMorgan Chase Bank*, 747 F.3d 44, 49 (2d Cir. 2014) (citing Restatement (Second) of Contracts § 313 cmt. a (1981))). Section 313, however, states that "a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages" unless certain prerequisites are met, but this case is not about benefits to the public at large and Plaintiffs are not incidental beneficiaries. Respectfully, the proper analysis is under Section 303 of the Restatement. *Schuerman v. United States*, 30 Fed. Cl. 420, 432 (1994); *Nat'l Sur. Corp. v. United States*, 31 Fed. Cl. 565, 575 (1994) (rejecting the requirement that "the contract reflect [an] intent to give the third party the direct right to compensation or to enforce that right against the promisor" because "§ 313 only applies to suits by members of the public for consequential damages against promisors who contract to render a public service."). In any event, MOHELA's cases are distinguishable because Plaintiffs have identified numerous parts of the Contract (that have been produced thus far), that demonstrate they were "intended to be benefitted" by the Contract. *Mont. v. United States*, 124 F.3d at 1273.

B. MOHELA breached the Contract

MOHELA also argues Plaintiffs' contract claim should be dismissed because it has not breached the Contract. Mot., 20. Setting aside that MOHELA has not produced all of the Contract,[7]

---

[7] *See, e.g.*, Dkt. 13-2, at 4-6. MOHELA has not yet produced "PSLF_ProcessingManual.doc." or "PSLF_CommunicationsListing." The PSLF Processing Manual is described as including "more detailed requirements for counting payments, employment certifications, etc." *Id.* at 4.

MOHELA is still incorrect. The Contract requires MOHELA to: refund overpayments to borrowers; explain to borrowers why certain months do not qualify toward PSLF and allow them to submit additional information on why a month should qualify; allow them to appeal a determination that a month does not qualify; allow borrowers to dispute/escalate issues and MOHELA must respond to each issue raised in the dispute; "accept and review borrower employment information"; conduct its own review of employer eligibility for PSLF for any borrower's employment; "upon receipt of forgiveness request, determine if the borrower is eligible for forgiveness/discharge" and if they are not eligible, "notify the borrower per PSLF communications requirements" and inform the borrower and take appropriate action on denials/non-approvals." Dkt. 13-2, 4-7. MOHELA has done none of this. Moreover, the Contract requires MOHELA to "resolve and respond to all disputes with resolution within 14 calendar days from receipt," and MOHELA has failed to do that too, as evidenced by the applications from Plaintiffs that have been pending for 500 days. *Id.* at 7.

Further, the law implies a reasonable time for contract performance. *Pretka v. Kolter City Plaza II Inc.*, No. 09-80706, 2011 WL 841513, at *6 (S.D. Fla. Mar. 7, 2011), *aff'd*, 550 F. App'x 830 (11th Cir. 2013) ("Florida law provides that when a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time."); *Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 20 (May 9, 2022) (holding "if a contract contains no explicit provision concerning the time for a party's performance of obligations, the party must perform within a 'reasonable time' as determined by the circumstances of the case."). Whether MOHELA's failure to process Plaintiffs' applications for *500 days* is a question of fact. *See, e.g.*, *William B. Tanner Co. v. Waseca-Owatonna Broad.*, 549 F. Supp. 411, 414 n.5 (D. Minn. 1982); *Singer v. W. Publ'g Corp.*, 310 F. Supp. 2d 1246, 1253 (S.D. Fla. 2004).

**7. The breach of fiduciary duty, negligence, and accounting claims are properly pled.**

MOHELA argues that it does not owe a fiduciary duty to Plaintiffs in servicing their loans or processing their PSLF applications. Mot., 19-22. While MOHELA may be correct that a fiduciary relationship is not always presumed, courts have imposed fiduciary duties when the defendant "went beyond its role as a silent lender and loan servicer." *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. 10-03892, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (explaining that a financial institution owes duty of care when it offers an opportunity to plaintiffs for loan modification and engaging with them regarding it). Fiduciary duties have also been found under substantially similar facts where the plaintiffs allege the servicer went beyond sending invoices and collecting payments and instead held itself out as having expertise and provided advice on loan repayment and how to receive loan forgiveness. *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1325 (M.D. Fla. 2018). An approved PSLF application will result in the discharge of the loan, making it akin to a loan modification that alters the terms. *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010) ("Here, by asking Plaintiff to submit supporting documentation, Defendant undertook the activity of processing Plaintiff's loan modification request. Having undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out the task.").

Here, Plaintiffs allege that MOHELA held itself out to them as having expertise (¶ 56), able to offer customized solutions and superior guidance from a dedicated student loan expert (¶ 57), and communicated with Plaintiffs regarding their PSLF applications (¶¶ 17-21; 25-29).[8] *See also* Dkt. 13-2, 5 (requiring the use of "highly trained representative"). This is embodied in the

---

[8] Should the Court deem it necessary, Plaintiffs request leave to amend to include a detailed accounting of all of their communications with MOHELA's representatives to date.

Restatement (Second) of Torts § 874, cmt. a, which states "a fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." MOHELA is under a duty to act for and provide advice to Plaintiffs in the processing of their loan forgiveness applications. ¶ 171-73.

Moreover, MOHELA has a financial incentive to deny PSLF applications because they reap more profits by continuing to service the loans. Dkt. 13-2, at 29 (MOHELA is paid $19.08 for denying a PSLF application, $5.25 for placing an application on hold, $52.50 for doing a detailed payment review; $4.67 for reconsidering an application, and $4.50 for receiving a call about PSLF); 40 (MOHELA is paid $3.09 per account in repayment status). This is not unlike a lender force-placing insurance on a home, where the lender has a financial incentive to act in its own interest instead of the interest of the individual borrower by receiving kickbacks and other financial incentives. *Mahdavieh v. Suntrust Mortg., Inc.*, No. 13-62801, 2014 WL 1365425, at *5 (S.D. Fla. Apr. 7, 2014) (finding breach of fiduciary duty where defendant "received unearned kickbacks"). At bottom, Plaintiffs' allegations are sufficient on the pleadings and MOHELA's factual rebuttals are best left to discovery and motions for summary judgment. *Daniel*, 328 F. Supp. 3d at 1325 ("Plaintiffs allege facts from which a jury could find such a relationship arose.").

**8. Plaintiffs' unjust enrichment claim is properly pled.**

MOHELA asserts that Plaintiffs' unjust enrichment claim "is legally insufficient and ripe for dismissal because Plaintiffs fail to allege (and cannot allege) that they conferred any benefit on MOHELA." Mot., 22. But Plaintiffs allege a benefit conferred on MOHELA separate and apart from any "servicing fees" that MOHELA collects. The two cases that MOHELA cites are premised on the belief that Plaintiffs' unjust enrichment claim is based solely on recovering servicing fees, and thus do not support dismissal. *See, e.g.*, *Hyland v. Navient Corp.*, No. 18-9031, 2019 WL

2918238, at *14 (S.D.N.Y. July 8, 2019) (rejecting "plaintiffs' theory . . . that Navient unjustly retained servicing fees that should have gone to FedLoan"); *Nigro v. Pennsylvania Higher Educ. Assistance Agency*, No. 19-02000, 2020 WL 5369980, at *9 (M.D. Pa. Sept. 8, 2020) (same).

MOHELA's failure to process their PSLF applications and forgive their loans caused Plaintiffs to make payments on loans that should have already been forgiven. Plaintiffs allege they were required to make payments, and thus experienced out-of-pocket losses associated with such payments. ¶¶ 19-21, 27-29. Those additional payments were made to MOHELA, and thus Plaintiffs are entitled to pursue their unjust enrichment claims. *Daniel*, 328 F. Supp. 3d at 1326 (rejecting motion to dismiss unjust enrichment claim regarding PSLF program because the plaintiffs alleged the loan servicer "benefitted from Plaintiffs' payments"); *see also Raimo v. Washington Univ. in St. Louis*, No. 4:20-CV-00634-SEP, 2022 WL 796239, at *12 (E.D. Mo. Mar. 16, 2022) (finding allegations of a benefit conferred on defendant sufficient to assert unjust enrichment claim at motion to dismiss stage).

## CONCLUSION

Plaintiffs respectfully request that the Court deny MOHELA's motion to dismiss. Should the Court identify any deficiencies, Plaintiffs respectfully request leave to amend. Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires"); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Boyd v. Busey Bank*, No. 4:21-CV-01481-SEP, 2022 WL 3355736, at *1 (E.D. Mo. Aug. 15, 2022) (granting leave to amend).[9]

Dated: March 13, 2024

---

[9] Plaintiffs voluntarily concede their Fair Debt Collection Practices Act claim (Count 3).

Respectfully submitted,

**THE SIMON LAW FIRM, P.C.**

*/s/ Amy Collignon Gunn*
Amy Collignon Gunn, #45016
Anthony G. Simon, #38745
800 Market Street, Ste. 1700
St. Louis, MO 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
agunn@simonlawpc.com
asimon@simonlawpc.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney (*pro hac vice*)
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: 888-711-9975
Facsimile: 610-421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's

CM/ECF system, thereby electronically serving it on all counsel of record.


*/s/ Amy Collignon Gunn*
Amy Collignon Gunn