UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENNIFER JOY and MISTY THOMAS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MISSOURI HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI d/b/a MOHELA, <br><br> Defendant. | Case No. 4:23-CV-01590-SEP |

**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY
OF THE STATE OF MISSOURI'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

THOMPSON COBURN LLP
William R. Bay, #26977(MO)
Jeffrey R. Fink, #44963(MO)
Matthew D. Guletz, #57410(MO)
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63101
(314) 552-6000 (telephone)
(314) 552-7000 (facsimile)
wbay@thompsoncoburn.com
jfink@thompsoncoburn.com
mguletz@thompsoncoburn.com

Attorneys for Defendant MOHELA

ARGUMENT

**1.      The Eleventh Amendment To The U.S. Constitution Bars This Case.**

The Eleventh Amendment is dispositive because it bars the Court from hearing any aspect of this case. The Court need not reach any other grounds for dismissal.

**A.      MOHELA has Eleventh Amendment immunity because, as the Supreme Court concluded in *Biden*, MOHELA is an arm, part, and instrumentality of the State of Missouri.**

Plaintiffs concede the applicable standard: "'The Eleventh Amendment protects States ***and their arms and instrumentalities*** from suit in federal court.'" *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023) (emphasis added) (quoting *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018)). "[A] arm or instrumentality of the State generally enjoys the same [Eleventh Amendment] immunity as the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017).

In *Biden v. Nebraska*, 143 S.Ct. 2355, 2366, 2375 (2023), the United States Supreme Court pronounced that MOHELA is an arm, part, and instrumentality of the State of Missouri (the "**State**"). Accordingly, the Eleventh Amendment bars this case.

Plaintiffs ask this Court to ignore what the Supreme Court clearly said in *Biden*. They correctly observe that *Biden* involved the State's Article III standing to sue based on harm to MOHELA instead of the Eleventh Amendment. But Plaintiffs never explain why that distinction makes any difference. That is because no reasoned distinction can be made.

The test for the State's Article III standing in *Biden* and the test for MOHELA's Eleventh Amendment immunity in the present case are the same: is MOHELA an arm, part, and instrumentality of the State? The Supreme Court answered this question "yes" in *Biden*. That is dispositive of this case.

Plaintiffs primarily rely on the out-of-circuit decision in *Pellegrino v. Equifax Info. Servs.,* No. 123CV1166LMBLRV, 2024 WL 37062 (E.D. Va. Jan. 2, 2024), in which the district court

- 1 -

concluded that "the Supreme Court's analysis in *Biden* does not resolve the question of whether MOHELA is entitled to Eleventh Amendment immunity" "because sovereign immunity requires an analysis into the extent of an entity's relationship with a state." *Id.* at *3.[1] *Pellegrino* was wrong because the State's Article III standing in *Biden* required the same "analysis into the extent of" MOHELA's "relationship" with the State as does MOHELA's Eleventh Amendment immunity. The *Pellegrino* court failed to explain how there is any difference between the Article III analysis and the Eleventh Amendment analysis. Notably, the *Pellegrino* court did not cite a single case, but simply relied on a statement by the Solicitor General during oral argument in *Biden* that "[w]e don't think MOHELA actually qualifies as an arm of the state for sovereign immunity because of the differing 'critical factors' between an inquiry into standing versus sovereign immunity." *Id.*[2] With all due respect, the legal opinion of the Solicitor General as to whether MOHELA has Eleventh Amendment immunity is irrelevant and not binding on any court.[3]

---

[1] Plaintiffs also rely on a magistrate's non-final recommendation in *Perkins v. Equifax Info. Servs., LLC*, No. SA19CA1281FBHJB, 2020 WL 13120600, at *1 (W.D. Tex. May 1, 2020), decided before *Biden*. In *Perkins*, the court was tasked with applying the distinguishable, Fifth Circuit's six-factor "arm of the state" test. The Eleventh Amendment issue was referred to a magistrate judge. His recommendation to the district judge is of little value, persuasive or otherwise, as MOHELA filed an objection to the recommendation. 5:19-CV-01281, Dkt. 83. While the district court's de novo review of the recommendation was pending, the case resolved.

[2] Moreover, *Pellegrino* should not be followed because it purported to apply the Fourth Circuit's four-factor test for determining whether a state-created entity qualifies for Eleventh Amendment immunity. This Court is bound to follow the Eighth Circuit's decisions.

[3] More relevant, of course, is the State of Missouri's opinion on the topic, with which the Supreme Court concurred. In *Biden*, the State's brief argued that "MOHELA is a state-created and state-controlled public entity that performs essential public functions for the State. As such, MOHELA is part of Missouri[.]" *See* [Microsoft Word -2023.01.27 - Respondents Brief (supremecourt.gov)](#), at 12 (last visited April 8, 2024). The State further argued that MOHELA is part of Missouri's government because the State created MOHELA by special law, it established MOHELA's powers, it assigned MOHELA to a state agency, it preserved its authority over MOHELA's assets, and it retained the right to abolish MOHELA. *Id*. at 17. Federal courts note that the state's "own view of the entity it created is significant[,]" and have relied on state attorney

> **B.     MOHELA is entitled to Eleventh Amendment immunity under the Eighth Circuit's pre-*Biden* test.**

In light of the Supreme Court's clear pronouncements in *Biden* that MOHELA is an arm, part, and instrumentality of the State, no further analysis is required (and the court's pre-*Biden* ruling in *Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *1 (E.D. Mo. July 29, 2021), that MOHELA does not enjoy Eleventh Amendment immunity is wrong). But to the extent any further analysis is required, MOHELA qualifies as an arm of the State under the Eighth Circuit's two-factor test: (1) whether the governmental agency is independent from the State of Missouri; and (2) "how a money judgment in litigation involving" the governmental agency "could affect the State of Missouri's treasury." *Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*, 640 F.3d 821, 827 (8th Cir. 2011); *see also Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("Given this statutory framework, MOHELA may well be an arm of the State of Missouri under the reasoning of our precedent.").

> **i.     MOHELA has virtually no independence because the State maintains expansive control over it.**

The State's control over MOHELA touches upon nearly every aspect of MOHELA's existence, including its leadership,[4] its assignment to a state agency,[5] its financial requirements,[6]

---

general's and other official statements by the state. *See, e.g., Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 422 (7th Cir. 2008); *Stratta v. Roe*, 961 F.3d 340, 351 (5th Cir. 2020).

[4] MOHELA's board is controlled by the State, including the appointment of the entirety of MOHELA's board either directly or indirectly by the Governor. RSMo. § 173.360.

[5] MOHELA "is assigned to" the Missouri Department of Higher Education ("**MDHE**"), which is an executive agency of the State of Missouri. RSMo. § 173.445.

[6] The State of Missouri imposes restrictions on how MOHELA conducts business, including: (i) limitations on investments (RSMo. § 173.385.1(13)), (ii) required distributions to Missouri's Lewis and Clark Discovery Fund ("**LCD Fund**") (RSMo. § 173.392), (iii) limitations on Stafford loan origination (RSMo. § 173.387), (iv) limitations on the nature of bond issuances

- 3 -

and its oversight,[7] as well as public meeting requirements.[8] Indeed, in *Biden*, the Supreme Court noted the State's significant supervision and control over MOHELA. 143 S. Ct. at 2366. Other federal district courts assessing MOHELA, including this Court, have agreed. *See Dykes*, 2021 WL 3206691, at *3; *Gowens v. Capella Univ., Inc.*, No. 4:19-CV-362-CLM, 2020 WL 10180669, at *3 (N.D. Ala. June 1, 2020) (holding that "MOHELA's autonomy [ ] is not a close question[]" because "[t]he State of Missouri exercises significant oversight over MOHELA's decision-making and statutorily regulates MOHELA's functions and operations, including its leadership."); *Good v. United States Dep't of Educ.*, No. 21-CV-2539-JAR-ADM, 2022 WL 2191758, at *3 (D. Kan. June 16, 2022), *appeal docketed*, No. 22-3286 (10th. Cir. December 30, 2022) (finding "[t]he control that the state exercises over MOHELA through the appointment of the board, limitations on financial expenditures, and requirements for spending and filing reports weighs slightly in favor of finding that MOHELA is an arm of the state."). Thus, the first factor weighs in MOHELA's favor.

      **ii.**    **A judgment against MOHELA would potentially affect the State of Missouri's treasury.**

While any judgment against MOHELA in this case would not come directly out of the State's coffers, direct state liability is not required for Eleventh Amendment immunity. Instead, the question is whether a judgment against a government agency would *potentially* impact the

---

to revenue bonds and the terms of the bonds (RSMo. §§ 173.390, 173.395, 173.405, and 173.410); and, (v) MDHE's required approval of collateral for loans (RSMo. § 173.385(8).

[7] MOHELA is required to file with the MDHE an annual report of its previous year's income, expenditures, and bonds or other forms of indebtedness issued and outstanding. *Id.*

[8] "Each meeting of the authority for any purpose whatsoever shall be open to the public... The proceedings and actions of the authority shall comply with all statutory requirements respecting the conduct of public business by a public agency." RSMo. § 173.365.

State's treasury. *Pub. Sch. Ret. Sys. of Missouri*, 640 F.3d at 830 (the question is one of the "potential" impact; "whether a money judgment in this particular case will actually [impact] the State of Missouri's treasury is not the relevant inquiry.").

In a 2007 amendment to MOHELA's statutes creating the LCD Fund, the State directed MOHELA to fund Missouri college campus building projects (approximately $245 million since 2007). Further, at the State's request, MOHELA has funded, and continues to fund, State scholarships and grants (approximately $100 million since 2009). MOHELA also established the Missouri Scholarship and Loan Foundation, and MOHELA has funded it (over $60 million since 2017) for the sole purpose of providing Missouri students with scholarships, grants, and interest-free loans. The fact that the State requires and relies on MOHELA to help fund higher education in Missouri establishes that a judgment against MOHELA would potentially impact the State's treasury. Indeed, contrary to the earlier *Dykes* decision, the Supreme Court recognized precisely this type of harm in *Biden*. 143 S.Ct. at 2366 (holding that "harm to MOHELA in the performance of its public function is necessarily a direct injury to Missouri itself"); *see also Gowens*, 2020 WL 10180669, at *4 ("Here, a judgment against MOHELA may result in a practical, rather than legal, impact on the State of Missouri... Thus, there is a potential that the State of Missouri would be functionally liable for a judgment against MOHELA..."). Any judgment against MOHELA would effectively require the State to replace the funds that MOHELA otherwise would have contributed to the funding of higher education in Missouri. Because the State oversees MOHELA's financial operation and could be functionally liable for a judgment against MOHELA, the second factor also tips in MOHELA's favor, and the Court should dismiss this case under the Eleventh Amendment.

2. **Even If The Eleventh Amendment Does Not Bar This Case, MOHELA Has State Sovereign Immunity Under Missouri Law, Which Bars All Of Plaintiffs' Claims Except Their Contract Claim.**

Regardless of whether MOHELA has Eleventh Amendment immunity, MOHELA has

state sovereign immunity under Missouri law. *Dykes*, 2021 WL 3206691, at *4. That state sovereign immunity bars all of Plaintiffs' claims except their contract claim.

Plaintiffs embrace *Dykes* on the Eleventh Amendment issue, but then ask this Court to ignore the holding in *Dykes* that MOHELA has state sovereign immunity under Missouri law. This holding in *Dykes* was correct and should be followed here.

Plaintiffs concede the sovereign immunity first factor (whether MOHELA was created by the government). Their attempts to distinguish *Dykes*' holdings on the second factor (whether MOHELA is controlled by and answerable to the government) and the third factor (whether MOHELA performs a service traditionally performed by the government) miss the mark.

As for the second factor, Judge Sippel noted: "[T]he state has significant political and operational control over MOHELA." 2021 WL 3206691, at *5. The Supreme Court later validated this conclusion in *Biden*. 143 S.Ct. at 2366 ("MOHELA is an instrumentality of Missouri: it was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State."). Beyond *Dykes*, other federal courts have reached the same conclusion. *See Gowens*, 2020 WL 10180669, at *3; *Good*, 2022 WL 2191758, at *3. The Court should reject Plaintiffs' unsupported arguments that MOHELA is not controlled by and directly answerable to the State. *See* Footnotes 4-7, *supra*.

As for the third factor, contrary to *Dykes*, Plaintiffs claim that they "can find no evidence … that holds student loan servicing is a service traditionally performed by the government." Opp. at 10. The State of Missouri itself has provided such "evidence." It has decreed that MOHELA is engaged in "the performance of an essential public function." RSMo. § 173.360; *see also* § 173.415 ("The authority is hereby declared to be performing a public function."); RSMo. § 173.095 (recognizing the important role of education in modern society and the public purposes of the

- 6 -

HEA, the State of Missouri declared that "state assistance to postsecondary students will benefit the state economically and culturally and is a public purpose of great importance").

Plaintiffs' argument that student loan origination and servicing is not "a service traditionally performed by the government" is bizarre given that: (a) the federal government has been making federal student loans since 1958 and "[o]utstanding federal student loans now total $1.6 trillion extended to 43 million borrowers," *Biden*, 143 S.Ct. at 2362; (b) the federal government could service its own loans; and (c) the federal government has long hired state agencies such as MOHELA to service those loans. Government student loans are as much "a service traditionally performed by the government" as any other government benefit program.

In their Opposition, Plaintiffs rely on authorities that do not even apply Missouri law, much less address MOHELA or the Missouri statutes expressly stating that MOHELA performs a public function. *See* Opp. at 10 (citing *Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *1 (M.D. Tenn. July 12, 2016), and *Castro v. Kentucky Higher Educ. Student Loan Corp.*, No. 16-24690-CIV, 2017 WL 588379, at *4 (S.D. Fla. Feb. 14, 2017)). These decisions have nothing to do with whether MOHELA, a Missouri entity, is entitled to sovereign immunity under *Missouri* law.

**3.    The HEA Preempts Plaintiffs' State Statutory Claims (Counts 1-2) And Common Law Claims (Counts 5-8).**

In an attempt to avoid preemption, Plaintiffs improperly seek to re-write their Complaint. Plaintiffs now contend that they "are not challenging the specific timeframes within which MOHELA is processing PSLF applications[;]" rather, Plaintiffs' claim is that MOHELA is "*not processing [PSLF applications] at all.*" Opp. at 11 (emphasis in original).[9] This argument cannot

---

[9] Plaintiffs violate Rule 11 in making this frivolous assertion. MOHELA processed Plaintiffs' PSLF applications and notified them as to the status of their applications before they

be squared with the Complaint. In the very first paragraph of the Complaint, Plaintiffs allege that this action "relates to [] MOHELA's failure to timely process and render decisions for student loan borrowers enrolled in the Public Service Loan Forgiveness program." Dkt. 1, at ¶ 1. The Complaint also includes the word "timely" forty-six times. Plaintiffs' attempt to recast their claims to avoid MOHELA's preemption arguments should be rejected.

As discussed in MOHELA's opening brief, federal appellate courts have drawn a distinction between claims against federal loan servicers that are based on affirmative misrepresentations, which are not preempted by the HEA, and those that are based on a failure to disclose or comply with alleged regulatory obligations, which are preempted by the HEA.

Plaintiffs do not dispute this distinction. Instead, they attempt a sleight of hand by asserting that their claims are based on affirmative misrepresentations when they are not. Opp. at 12. Plaintiffs do not specifically plead a single alleged misrepresentation by MOHELA.

The theory underlying all of Plaintiffs' claims is that MOHELA did not timely process and render decisions on PSLF applications. But no deadline is set forth in MOHELA's Contract. So Plaintiffs try to use state consumer protection laws to impose new regulatory obligations on MOHELA, specifically to process and decide PSLF applications on a certain timeline.

Plaintiffs' reliance on *Berman v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:21CV63, 2022 WL 767530 (M.D.N.C. Mar. 14, 2022) is misplaced. Unlike here, *Berman* dealt with alleged affirmative misrepresentations by PHEAA. Plaintiffs' Complaint here does not allege that MOHELA made any affirmative misrepresentations to Plaintiffs. *See* Compl. at ¶¶ 14-29.

---

brought this lawsuit. Moreover, since taking over the PSLF Program on July 1, 2022, MOHELA's actions in conjunction with the U.S. Department of Education ("**USDOE**") have resulted in the discharge of over 1,750,000 loans involving nearly $48 billion of federal student loans held by 660,000 borrowers under the PSLF Program as of February 29, 2024. Between 2007 and 2021 (prior to MOHELA's role), just over 14,000 loans were discharged.

Rather, Plaintiffs allege that their student loans have not yet been discharged even though they supposedly have made over 120 qualifying payments (which they have not). Thus, *Berman* neither "rejected [MOHELA's] exact argument," (Opp. at 14), nor persuasively supports Plaintiffs' opposition to MOHELA's preemption arguments.

Similarly, recent USDOE guidance does not undercut MOHELA's preemption arguments. The USDOE's statements cited by Plaintiffs are in the context of "fraud" and "affirmative misrepresentations." *Federal Preemption and Joint Federal-State Regulation and Oversight of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*, 86 FR 44277-01, at 44279. The USDOE has reiterated that state laws that are directly inconsistent with federal law, including those purporting to "create[e] deadlines for servicers to respond to borrower inquiries or disputes[,]" *are* preempted. *Id.* at 44280-81. According to the USDOE, the "limits of preemption are reached when the discussion moves beyond simply setting specific details of such 'administrative mechanisms'[,]" and relates to State measures that "prohibit affirmative misrepresentations" that do not conflict with federal law. *Id.* at 44281. Thus, the USDOE's recent guidance does not undermine MOHELA's position.

As is readily apparent, the administrative mechanics of the PSLF Program—including how and when PSLF applications are to be processed and decided—must be left solely to the USDOE. Otherwise, there will be chaos. In sum, the HEA preempts Plaintiffs' Colorado and Florida statutory claims and their state common law claims. Counts 1-2 and 5-8 should be dismissed.

**4.     The Colorado Act Claim (Count 1) And The Florida Act Claim (Count 2) Fail.**

In the Complaint, Plaintiff Joy alleges that MOHELA violated the Colorado Act and Plaintiff Thomas alleges that MOHELA violated the Florida Act "by failing to timely process and render decisions on [their] … PSLF applications." Compl. ¶¶ 133, 144. In their opposition (at 12),

Plaintiffs concede that "[t[hese statutes do not require MOHELA to process PSLF applications within a certain time." But then they proceed to assert that "MOHELA's failure to process their applications in the *500 days* they have been pending is a violation of these statutes." Opp. at 12.[10] If, as Plaintiffs concede, "[t]hese statutes do not require MOHELA to process PSLF applications within a certain time," then the statutes obviously do not require MOHELA to process PSLF applications within 500 days.

Plaintiff Thomas contends that "MOHELA employed schemes to defraud and mislead her about the status of her loans and applications, and engaged in unfair practices by misrepresenting material information about her PSLF applications." Opp. at 16. She adds that she "alleges unfair methods of competition, unconscionable acts and unfair and deceptive practices for the same reasons" as Plaintiff Joy alleges. *Id.* at 17. But the Complaint is devoid of any facts supporting these conclusory allegations. Plaintiffs do not identify any material information that MOHELA allegedly misrepresented to them and do not allege how MOHELA defrauded or misled them about the status of their loans or PSLF applications. Indeed, they do not identify any representations that MOHELA supposedly made to them. Because they fail to allege underlying facts supporting a plausible claim under the Colorado Act or the Florida Act, Counts 1 and 2 should be dismissed.

Count 2 also fails because, as Plaintiff Thomas concedes (Opp. at 16), the Florida Act does not apply to general "servicing and loan collection activity." She seeks to avoid dismissal by arguing that MOHELA engaged in "unauthorized activities" based on readily-distinguishable authorities. For example, in *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014), the court acknowledged that the Florida Act does not apply to traditional "loan collection

---

[10] As noted above, there was never anything close to a 500 day delay as MOHELA timely responded to Plaintiffs regarding their applications before they filed this lawsuit, including advising them that they had not yet met the threshold of 120 qualifying payments for a discharge.

activities," but denied a mortgage assignee's motion to dismiss based on the specific allegations in that case. *Id.* at 1323-24. The court noted that the plaintiffs alleged that the defendant sought to collect fees outside the scope of its legal entitlement and billed the plaintiffs for unauthorized services. *Id.*[11] No such allegations are present here.

Moreover, Plaintiffs do not address MOHELA's alternative argument that the Florida Act does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1). MOHELA's servicing of federal student loans (including its role in the PSLF process) results from requirements imposed on MOHELA by federal law and contract. *See* 20 U.S.C. 1087a, *et seq.*; 34 C.F.R. 685.100, *et seq.* Thus, the Florida Act does not apply to MOHELA. *See, e.g., Freeman v. Great Lakes Educ. Loan Servs.*, No. 3:12CV331/MCR/CJK, 2013 WL 2355541, at *7 (N.D. Fla. May 28, 2013) (dismissing FDUTPA claim because defendant's activities were required by federal law and contract). Count 2 should be dismissed.

**5.   Plaintiffs Concede That Their FDCPA Claim (Count 3) Should Be Dismissed.**

The Opposition concedes the FDCPA claim and it should be dismissed. Opp. at 25, n. 9.

**6.   Plaintiffs' Breach Of Contract Claim (Count 4) Fails.**

  **A.   Plaintiffs are not third party beneficiaries of MOHELA's Federal Servicing Contract with the USDOE.**

MOHELA's opening brief cited three federal decisions holding that borrowers could not

---

[11] In sharp contrast to the allegations in *Alhassid*, there is no plausible allegation here that MOHELA charged Plaintiff Thomas additional fees for unauthorized services for MOHELA's financial benefit. Any fees charged borrowers go to USDOE; MOHELA gets paid a flat amount by USDOE for its work. It is the USDOE's policy that it (not MOHELA) will refund Plaintiff Thomas for payments made beyond the 120 required payments if her student loans are ultimately discharged under the PSLF Program. MOHELA does not receive money from borrowers as their payments go to a USDOE lockbox. Plaintiff Thomas has no injury—she is legally obligated to make payments *to the USDOE* until her student loans are discharged (unless she requests that the loans be put in forebearance during the pendency of her application (which she has not done so)).

pursue a third-party beneficiary breach of contract claim against PHEAA, the loan servicer that previously performed the PSLF processing function for the USDOE. *See Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275, at *2-3 (D.N.J. Apr. 14, 2022); *Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798, at *8 (N.D. Ga. Mar. 16, 2020); *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092 (C.D. Cal. 2019)). Plaintiffs ignore these decisions.

Instead, Plaintiffs rely solely on general third party beneficiary cases involving different factual allegations. For example, Plaintiffs insist that *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006 (D. Neb. 2019) is "particularly instructive." Opp. at 19. Not so. *Olsen* did not deal with the PSLF Program, but assessed whether borrowers were third party beneficiaries of the servicing contract as related to the USDOE's income-based repayment plan. *Id.* at 1014. The *Olsen* court applied Nebraska law regarding third-party beneficiary standards, not federal common law.[12] Applying Nebraska law, the *Olsen* court concluded that the plaintiffs sufficiently alleged that their interests, as financially distressed borrowers, were contemplated by the program. *Id.* at 1014-15. In addressing the third party beneficiary theory, *Olsen* did not even address the provisions of the servicing contract at issue. *Id.* By contrast, federal courts applying federal common law and addressing the servicing contract at issue and the PSLF Program have reached the opposite decision. *See, e.g., Love,* 2020 WL 1545798, at *8; *Winebarger*, 411 F. Supp. 3d at 1092.

**B.    Plaintiffs fail to identify any provision of the Contract that MOHELA supposedly breached.**

Plaintiffs' Opposition excises a number of obligations that are imposed on MOHELA by

---

[12] Plaintiffs do not address, much less rebut, MOHELA's argument that courts must apply federal common law in determining whether an individual is a third party beneficiary of a federal government contract. *See, e.g., Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019); *Winebarger*, 411 F. Supp. 3d at 1092 n.13.

the Contract, ranging from refunding overpayments, communicating with borrowers, and providing certain notices. Opp. at 22. But Plaintiffs fail to remedy the fatal flaw of their pleading—"[t]he complaint must, at minimum, cite the contractual provision allegedly violated. Vague references to unspecified 'agreements' are insufficient to state a claim for breach of contract." *AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693, 703 (E.D. Mo. 2023) (internal quotations and citations omitted). The Complaint's third party breach theory is dependent on the allegation that MOHELA is contractually required to "timely process[] PSLF applications and timely render[] decisions on the PSLF applications." *See* Compl. ¶ 167. However, the Complaint does not identify any specific provision in the Contract imposing any such obligation. Nor does Plaintiffs' Opposition. In reality, there is no contractual language that imposes a duty on MOHELA to process and decide PSLF applications within a certain timeframe.[13] Thus, Plaintiffs fail to plausibly allege a breach of the Contract, even if Plaintiffs are third party beneficiaries with standing to pursue their contract claim (which they are not). This was the holding of a recent federal court addressing an identical theory based on generic allegations and relating to PHEAA's role as the former PSLF servicer. *Wade*, 2022 WL 1115275, at *3.

**7.    Plaintiffs' Breach Of Fiduciary Duty, Negligence, And Accounting Claims (Counts 5-7) Fail.**

Plaintiffs do not address MOHELA's arguments concerning their negligence and

---

[13] This Court can take judicial notice of the USDOE's motion to dismiss in a related case, *Morgan, et al. v. MOHELA, et al.*, Case No. 4:24-CV-00147-CDP. *See, e.g., Williams v. Roper*, No. 4:13-CV-2440 CAS, 2016 WL 4368097, at *3 (E.D. Mo. Aug. 16, 2016) (court can take judicial notice of docket entries and filings in this District). The USDOE, *which was the drafter of the Contract*, argues that Plaintiffs' breach theory arising from the alleged failure to process PSLF applications within a certain (unspecified) time fails because there is no provision in the Contract imposing such a duty. *See* Dkt. 25, at 2. Moreover, the USDOE has noted (*Id.*, Dkt. 25, at 10) that the Master Promissory Notes between USDOE and borrowers do not require instantaneous approval of PSLF applications either, and the PSLF application process is detailed in the federal regulations. *See* 34 C.F.R. 685.219(e). Thus, Plaintiffs do not allege a justiciable harm.

accounting claims (Counts 6-7). The Court, therefore, should treat MOHELA's arguments as conceded and dismiss these claims. *See, e.g., Espey v. Nationstar Mortg., LLC*, No. CIV. 13-2979 ADM/JSM, 2014 WL 2818657, at *11 (D. Minn. June 19, 2014) ("Plaintiff's failure to respond [to dismissal arguments] amounts to a waiver, and on that basis alone defendant's motion to dismiss [the plaintiff's] claim should be granted."); *Haan v. Noem*, No. CIV 13-1009, 2013 WL 5701638, at *3 (D.S.D. Oct. 17, 2013) ("Because Mr. Haan has not responded substantively to these arguments, the court can and should treat them as conceded and waived.").

As for their breach of fiduciary duty claim (Count 5), Plaintiffs acknowledge that a fiduciary duty does not arise as a matter of law between a loan servicer and a borrower. Opp. at 23. Nevertheless, they insist that MOHELA owed a fiduciary duty to them because it supposedly went beyond the traditional role of a loan servicer—despite the fact that MOHELA's servicing contract with the USDOE states in numerous places that such is exactly the role MOHELA will play (*see* Dkt. 13-2, 2-9)—and assumed a fiduciary duty by offering borrowers an opportunity to participate in the PSLF Program, which, they believe, is akin to loan modification.

Plaintiffs' position is wrong because Congress (not MOHELA) adopted the PSLF Program, and the USDOE interprets and administers the PSLF Program, including being the ultimate decisionmaker on Plaintiffs' qualification for forgiveness under the PSLF Program. MOHELA was simply tasked with assisting the USDOE in the process. The mere fact that MOHELA communicated with Plaintiffs regarding the status of their PSLF applications and allegedly referenced its experience with servicing student loans is insufficient to give rise to a fiduciary duty.

Plaintiffs do not address the decisions of several federal courts that have dismissed identical breach of fiduciary duty claims. *See, e.g., Winebarger*, 411 F. Supp. 3d at 1091-92; *Love*, 2020 WL 1545798, at *6-7. As in those cases, the Court should dismiss Plaintiffs' breach of fiduciary

duty, negligence, and accounting claims (Counts 5-7).

**8.     Plaintiffs' Unjust Enrichment Claim (Count 8) fails.**

Plaintiffs concede that their unjust enrichment claim (Count 8) cannot be based on any servicing fees that MOHELA has received from the USDOE. Opp. at 24-25. Nevertheless, Plaintiffs insist that MOHELA was unjustly enriched by the "extra" loan payments that Plaintiffs allegedly have made after their loans should have been forgiven. *Id.* at 25. But any "extra" loan payments have been directly remitted to and retained by the USDOE (the owner of Plaintiffs' loans), not MOHELA,[14] and will be directly refunded to Plaintiffs by the USDOE if Plaintiffs are found to qualify for PSLF and have made more than the requisite 120 qualifying loan payments. Thus, Plaintiffs have not conferred any benefit on MOHELA.[15] Count 8 should be dismissed.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint.

---

[14] MOHELA does not "touch" borrower payments coming or going. Borrower payments go to a USDOE lockbox. Nor does MOHELA refund over-payments; the USDOE makes those refunds directly. Finally, the monthly, "per borrower" servicing fee that MOHELA receives from the USDOE is unrelated to borrower payments.

[15] Similarly, even if Plaintiffs did confer a benefit on MOHELA (they did not), there is no benefit that MOHELA would retain. As correctly pointed out by the USDOE in their dismissal brief in the *Morgan* case, "Plaintiffs cannot claim that student loan payments they have made while their PSLF applications were pending are an injury that gives rise to standing: they are legally obligated to make these payments, it is already the [USDOE's] stated policy that any overpayments will be refunded upon application approval, and Plaintiffs had the option to request that their loans be put in forbearance during the pendency of their applications." Case No. 4:24-CV-00147-CDP, Dkt. 25, at 1.

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/ Matthew D. Guletz*
    William R. Bay, #26977(MO)
    Jeffrey R. Fink, #44963(MO)
    Matthew D. Guletz, #57410(MO)
    One U.S. Bank Plaza, Suite 2700
    St. Louis, Missouri 63101
    (314) 552-6000 (telephone)
    (314) 552-7000 (facsimile)
    wbay@thompsoncoburn.com
    jfink@thompsoncoburn.com
    mguletz@thompsoncoburn.com

    Attorneys for Defendant MOHELA