**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

|  |  |
|---|---|
| JENNIFER JOY and MISTY THOMAS, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI d/b/a MOHELA,<br><br>*Defendant*. | Civil Action No. 23-cv-01590 |

**BRIEF OF THE STATE OF MISSOURI AS AMICUS CURIAE
IN SUPPORT OF DEFENDANT MOHELA'S MOTION TO DISMISS**

CATHERINE L. HANAWAY
Attorney General of Missouri

LOUIS J. CAPOZZI, III
  *Solicitor General*

WILLIAM J. SEIDLECK
  *Principal Deputy Solicitor General*

OFFICE OF THE ATTORNEY
GENERAL Supreme Court Building
207 West High Street
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 645-9662
Fax. (573) 751-0774
Louis.Capozzi@ago.mo.gov

*Counsel of amicus curiae State of Missouri*

January 26, 2026

**INTEREST OF THE AMICUS CURIAE AND INTRODUCTION**

The State of Missouri, by and through its Attorney General, submits this brief as *amicus curiae* in support of Defendant MOHELA's Motion to Dismiss based on Eleventh Amendment sovereign immunity.

Missouri has a strong interest in the outcome of this litigation because "[b]y law and function, [Defendant] MOHELA is an instrumentality of Missouri." *Biden v. Nebraska*, 143 S. Ct. 2355, 2366 (2023). As such, any "harm to MOHELA is also a harm to Missouri." *Id.* (quoting Mo. Rev. Stat. § 173.360). Missouri's strong interest extends to the preservation of Eleventh Amendment sovereign immunity where the state or its instrumentalities face litigation by citizens of another State in Federal Court.

Here, Plaintiffs Joy and Thomas bring an eight-count class action against MOHELA, alleging violations of Colorado's Student Loan Equity Act, Colo. Rev. Stat. § 5-20-109, Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, as wells as claims for Breach of Contract, Breach of Fiduciary Duty, Negligence, Accounting, and Unjust Enrichment. ECF 1, at 54–65. The Complaint requests the Court "award all actual, general, special, incidental, punitive, and consequential damages to which Plaintiffs and Class members are entitled." *Id.* at 66. Because MOHELA is an instrumentality of Missouri, any damage award against MOHELA necessarily imposes financial harm against the State.

1

**ARGUMENT**

**I.      MOHELA is an Arm and Instrumentality of Missouri.**

"By law and function, MOHELA is an instrumentality of Missouri." *Biden v. Nebraska*, 143 S. Ct. at 2366. The Supreme Court's holding was clear. Indeed, every court to evaluate the question has reached the same conclusion. *See* TRO order, *Missouri v. Dep't of Educ.*, No. 2:24-cv-103, ECF 17 at 3 (S.D. Ga., Sept. 5, 2024); Memorandum and Order, *Missouri v. Biden*, No. 4:24-cv-520, ECF 17 at 13 (E.D. Mo., June 24, 2024); Injunction Pending Appeal Order, *Missouri v. Biden*; No. 24-2332 & 24-2351, ID No. 5422990 at 4 (8th Cir., Aug. 9, 2024).

"Government-created and -controlled corporations are" often "part of the Government itself." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995). Such corporations exist when the Government (1) "creates [the] corporation by special law," (2) "for the furtherance of governmental objectives," and (3) "retains for itself permanent authority to appoint a majority of the directors." *Id*. at 399. "[T]he practical reality of [government] control and supervision prevails" over corporate labels. *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 55 (2015).

Applying those factors, MOHELA is an arm of Missouri's government. First, the legislature created MOHELA by special law. Mo. Rev. Stat. § 173.360. Second, Missouri declares that "the exercise by [MOHELA] of the powers conferred" on it, which include ensuring access to loans for Missouri students, is "the performance of an essential public function." *Id*. Third, the governor appoints five of MOHELA's seven members; the remaining two are officials of other state entities; and all seven are "remov[able] by the governor." *Id*.

Other considerations underscore Missouri's control over MOHELA. The State established MOHELA's powers, *see id*. § 173.385, and in doing so controls MOHELA by limiting it to only those powers. Missouri also "assigned" MOHELA to its Department of Higher Education and

2

Workforce Development and requires annual reports of MOHELA's finances. *Id.* § 173.445. Additionally, the State preserved its authority "over assets of" MOHELA, *id.* § 173.420, and may "abolish" MOHELA in the State's discretion, *see Cas. Reciprocal Exch. v. Missouri Emps. Mut. Ins. Co.*, 956 S.W.2d 249, 255 (Mo. 1997) (en banc).

Additionally, MOHELA transfers money to Missouri, through the State Treasury, in two significant ways. First, MOHELA has given $245 million—with at least another $105 million forthcoming—to the State's Lewis and Clark Discovery (LCD) Fund, see MOHELA FY 2023 Financial Statement at 20–21;[1] Mo. Rev. Stat. § 173.385.2, which supports "capital projects" at Missouri's "public colleges and universities," Mo. Rev. Stat. § 173.392.2. Second, Missouri has authorized MOHELA to provide student financial aid, *id.* § 173.385.1(19), and MOHELA has done so by contributing, at the governor's request, nearly $100 million over the last 14 years to the State's scholarship and grant programs; 2021-1 Offering Memorandum at 58;[2] Missouri Dep't of Higher Educ. and Workforce Development, Grants and Scholarships.[3] Any award of damages against MOHELA would imperil its ability to transfer this money to the State Treasury and serve the public functions for which MOHELA was created.

In light of the above, the Supreme Court concluded that MOHELA "was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State." *Biden v. Nebraska*, 143 S. Ct. at 2366. That is why any "harm to MOHELA in the performance of its public function is necessarily a direct injury to Missouri itself." *Id*. This Court is bound by that ruling.

---

[1] https://www.mohela.com/DL/common/publicinfo/financialStatements.aspx
[2] https://sofi.mohela.com/DL/common/publicInfo/investorInformation.aspx
[3] https://dhewd.mo.gov/ppc/grants-scholarships

**II.     MOHELA is Entitled to Eleventh Amendment Sovereign Immunity.**

As an arm and instrumentality of Missouri, MOHELA is entitled to sovereign immunity against Plaintiffs' claims.  "The sovereign immunity enjoyed by states and recognized in the Eleventh Amendment bars private parties from bringing actions for damages against unconsenting states in federal courts." *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) (citing *Becker v. Univ. of Neb.,* 191 F.3d 904, 908 (8th Cir.1999)).   The Eleventh Amendment protects not just States themselves, but "their arms and instrumentalities from suit in federal court." *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023)

Under Eighth Circuit precedent, an inquiry into whether a state instrumentality is entitled to sovereign immunity under the Eleventh Amendment considers two factors to determine arm-of-the-state status. First, the Court must consider MOHELA's "independence from the State of Missouri." *Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*, 640 F.3d 821, 827 (8th Cir. 2011) (citing *Gorman v. Easley,* 257 F.3d 738, 743 (8th Cir.2001)).   Second, the Court must examine "how a money judgment in litigation involving the Retirement Systems could affect the State of Missouri's treasury." *Id.* (citing *Thomas*, 447 F.3d at 1084).  Each factor supports a finding that MOHELA is entitled to sovereign immunity under the Eleventh Amendment.

**A.  MOHELA is subject to Missouri's supervision and control.**

The Supreme Court found last year that MOHELA "is subject to the State's supervision and control." *Biden v. Nebraska*, 143 S. Ct. at 2366.  Thus, the first factor is met as a matter of binding precedent.   Several provisions of the enabling statute underscore this conclusion: MOHELA is governed by a Board consisting of seven directors, "five of whom shall be appointed by the governor by and with the advice and consent of the senate," Mo. Rev. Stat. § 176.360; the Governor can remove any member for cause, *id.*; MOHELA must provide annual financial reports

to the Missouri Department of Education, detailing its income, expenditures, and debts, *id.* § 173.445; the Missouri Department of Education must approve the sale of certain loans by MOHELA, § 173.385.1(8); and the State "can abolish [MOHELA] and set the terms of its dissolution." *Casualty Reciprocal Exchange v. Missouri Employers Mut. Ins*. Co., 956 S.W.2d 249, 254–55 (Mo. 1997). Indeed, in *Dykes v. Missouri Higher Educ. Loan Auth.*, a case cited favorably by Plaintiffs, the court concluded that Missouri "exercises significant political and operational control over MOHELA." No. 4:21-CV-00083-RWS, 2021 WL 3206691, at \*3 (E.D. Mo. July 29, 2021). The first factor weighs in favor of finding MOHELA an arm of Missouri.

**B. A money judgment on MOHELA could have a significant effect on the State's Treasury.**

The second factor asks "how a money judgment in litigation involving the [defendant] could affect the State of Missouri's treasury." *Pub. Sch. Ret. Sys. of Missouri*, 640 F.3d at 827 (citing *Thomas*, 447 F.3d at 1084). In considering this second factor, the Eighth Circuit has noted whether a judgment "will actually" affect Missouri's treasury "is not the relevant inquiry," but instead whether there is a "potential" effect. *Id.* at 830 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). As part of its analysis, the Eighth Circuit considers whether a State "makes annual appropriations to finance the entity's operating expenses," *id.* (citing *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 45 (1994)); and may have a "responsibility to pay an entity's obligations," *id.* (citations omitted).

For almost every year since 2009, the State General Assembly has appropriated MOHELA funds, totaling nearly $100 million, as line items in the State's budget for scholarships and grants for Missouri students. In the last fiscal year before *Biden v. Nebraska* was decided, MOHELA earned $88.9 million—roughly 77.5 percent of its operating revenue—from servicing 5.2 million Direct Loan accounts. MOHELA FY 2022 Financial Statement at 4, 23, https://perma.cc/2F8G-

WWWV (MOHELA Financial Statement). This revenue depends on how many accounts MOHELA services—*i.e.*, the more accounts, the more it earns. MOHELA also transfers money to Missouri. MOHELA transferred $245 million to the Missouri Treasury for the State's LCD Fund for capital projects for public colleges and universities, and nearly $100 million contributed to the State's scholarship and grant programs over the last 17 years. Additionally, by statute, MOHELA still owes $105 million for additional capital projects at Missouri's public colleges and universities. Mo. Rev. Stat. § 173.392. A judgment against MOHELA could thus affect the treasury to the tune of hundreds of millions of dollars.

That the State Treasurer might not be directly liable for paying any judgment against MOHELA and in favor of Plaintiff is not significant to the analysis of the second factor. *Pub. Sch. Ret. Sys. of Missouri*, 640 F.3d at 831 (finding "even in litigation where the State would not actually have had to pay a money judgment, the Supreme Court has noted that a State's responsibility for an entity's debts was of 'considerable importance.'" (citing *Regents*, 519 U.S. at 430)). Indeed, in *Public School Retirement System of Missouri*, the Eight Circuit found the second factor satisfied for a similar Missouri instrumentality even when an enabling statute does not "explicitly [or implicitly] provide that the State of Missouri must pay the [instrumentality's] debts." *Id.* It was enough, instead, that the ongoing solvency of the instrumentality "could benefit the State of Missouri's treasury." *Id.* at 832.

Here, Plaintiffs' Complaint poses a severe risk to the State's economic and policy interests. As the Supreme Court readily concluded last year, any "harm to MOHELA in the performance of its public function is necessarily a direct injury to Missouri itself." *Biden v. Nebraska*, 143 S. Ct. at 2366. That conclusion is supported by the hundreds of millions MOHELA transferred to the Missouri Treasury for the State's LCD Fund and to the State's scholarship and grant programs.

Absent such inflows from its instrumentality, the State would have been required to earmark and expend equivalent funds from its Treasury.  The availability of MOHELA's net revenues for use by the State benefits the State by enabling it to draw on funds that would not otherwise be available for State uses and by freeing up other State funds for other public programs.  A damages award against MOHELA would imperil its ability to uphold the instrumentality's ability to further disburse funds into the State Treasury.  Indeed, Plaintiffs' Complaint alleges "thousands to tens of thousands" of violations, multiplied by eleven counts, *see* ECF 1, at 52, raising the specter of massive damages against MOHELA, and thus Missouri.

### C.  Missouri intended for MOHELA to be entitled to sovereign immunity

Finally, though not a factor explicitly considered by the Eighth Circuit test, the history and content of the Missouri Higher Education Loan Act, Mo. Stat. Rev. §§ 173.350 *et seq*., confirm the Missouri legislature's intent to create an instrumentality of the state entitled MOHELA to sovereign immunity under the Eleventh Amendment.  Four points support this conclusion.

**1.** MOHELA's enabling statute named the entity the "Higher Education Loan Authority *of the State of Missouri*" and described the same as a "public instrumentality and body corporate" of Missouri.  Mo. Rev. Stat. § 176.360 (emphasis added).  Courts have routinely found that a State's "intent to create a governmental instrumentality of the Commonwealth . . . strongly suggests that PRPA is an arm of the Commonwealth entitled to sovereign immunity.  *Puerto Rico Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 875 (D.C. Cir. 2008) (citing *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr.,* 322 F.3d 56, 69–70 (1st Cir. 2003)).

**2.**  MOHELA's enabling statute explains the purpose of MOHELA as enabling "that all eligible postsecondary education students have access to student loans that are guaranteed or

insured, or both," supporting "the efforts of public colleges and universities to create and fund capital projects," and supporting "the Missouri technology corporation's ability to work with colleges and universities in identifying opportunities for commercializing technologies, transferring technologies, and to develop, recruit, and retain entities engaged in innovative technologies." Mo. Rev. Stat. § 176.360. The statute continues by describing MOHELA as providing a critical public service: "the exercise by the authority of the powers conferred by [the statute] shall be deemed to be the performance of *an essential public function.*" *Id.* (emphasis added). Support for higher education is a function "typically performed by state governments as opposed to functions performed by local governments or non-governmental entities." *Puerto Rico Ports*, 531 F.3d at 875 (citing *Hess,* 513 U.S. at 45; *Lake Country Estates,* 440 U.S. at 402). Indeed, the Supreme Court confirmed this conclusion in *Biden v. Nebraska*, holding that MOHELA performed an "essential public function." 143 S. Ct. at 2366 (citing *Todd v. Curators of University of Missouri*, 347 Mo. 460, 464, 147 S.W.2d 1063, 1064 (1941) ("Our constitution recognizes higher education as a governmental function.")). This Court is bound by that holding.

**3.** MOHELA is treated as a government instrumentality for purposes of other Missouri laws. Specifically, MOHELA is a "governmental body" for purposes of Missouri's "Sunshine Law," Mo. Rev. Stat. Ch. 610, with a responsibility of furnishing documents in response to requests thereunder. Courts have recognized legal obligations to open-records or sunshine laws as indicia of treatment as an instrumentality. *See Hammons v. Univ. of Maryland Med. Sys. Corp.*, 551 F. Supp. 3d 567, 587 (D. Md. 2021); *Smith v. Univ. of Fla. Jacksonville Physicians, Inc.*, No. 3:17-CV-519-J-39MCR, 2018 WL 1866096, at *3 (M.D. Fla. Mar. 1, 2018). Indeed, the State has relied upon this measure to collect materials necessary for its litigation against the Federal Government's three Mass Cancellation Plans over the last two years.

8

**4.** Finally, Missouri fully supports the conclusion that MOHELA is an arm of the State entitled to sovereign immunity. Indeed, the State raised this same point in *Biden v. Nebraska*, arguing that "MOHELA qualifies as a 'public entity' entitled to sovereign immunity from tort claims under state law." Brief for the Respondents at 32, No. 22-506 (Jan. 27, 2023) (citations omitted). MOHELA's exercise of its powers, including its higher education loan servicing activities and financial support for grants and scholarships for students, constitutes the exercise of a State essential public governmental function.

The Supreme Court has previously relied upon the positions presented in States' *amici curiae* filing as indicia of whether an instrumentality is afforded sovereign immunity under the Eleventh Amendment. *See Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979). That is particularly true where, as here, an amicus brief is submitted by the statewide official who has the duty under state law of advancing "the rights and interests of the state … in any proceeding or tribunal in which the state's interests are involved." Mo. Rev. Stat. § 27.060.

Missouri created MOHELA, selects its members, tasked it with performing essential functions for the State, and directed it to return funds to the State. MOHELA is an instrumentality of Missouri and entitled to Eleventh Amendment sovereign immunity. The State now files this *amicus curiae* brief in support of Defendant's Motion to Dismiss to reiterate its position.

## CONCLUSION

For the foregoing reasons, *amicus curiae* State of Missouri respectfully requests this Court grant Plaintiff MOHELA's Motion to Dismiss on the grounds that MOHELA is an instrumentality of the State of Missouri and entitled to sovereign immunity from suit under the Eleventh Amendment.

Date: January 26, 2026

Respectfully submitted,

CATHERINE L. HANAWAY
Attorney General of Missouri

/s/ *William J. Seidleck*
William J. Seidleck #77794MO
 Principal Deputy Solicitor General

Louis J. Capozzi, III #77756MO
 Solicitor General

OFFICE OF THE ATTORNEY
GENERAL Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
*Counsel for amici curiae State of Missouri*

## CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on January 26, 2026, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, all consistent with Federal Rule of Civil Procedure 5(b).

I further certify that the forgoing document contains 2,725 words, exclusive of matters designated for omission, as counted by Microsoft Word 2016.

/s/*William J. Seidleck*
Counsel for *amici curiae* State of Missouri