UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER JOY and MISTY THOMAS, *on behalf of themselves and all others similarly situated*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:23-CV-1590-ZMB |
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, *d/b/a MOHELA*, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Two groups of student loan borrowers brought parallel class-action lawsuits against Defendant MOHELA, a loan servicer, for damages stemming from its purported failure to timely process their applications for loan forgiveness. The second group also sued the Federal Government for allegedly breaching their promissory notes. Following consolidation of the cases, this matter is before the Court on MOHELA's motions to dismiss. Docs. 12, 33. As a public entity, MOHELA enjoys sovereign immunity, which bars the bulk of the claims it faces. And the remaining breach-of-contract claims likewise fail because Plaintiffs have not established that they are third-party beneficiaries to MOHELA's contract with the Federal Government. Also before the Court is Defendants United States Department of Education and Linda McMahon's[1] (collectively, "the Department") motion to dismiss. Doc. 35. Because Plaintiffs have failed to establish the amount-in-controversy requirement for this type of suit against the Government, this Court lacks subject matter jurisdiction to hear those claims. Accordingly, the Court dismisses both cases.

[1] McMahon became the Secretary of Education in 2025, so she is automatically substituted for her predecessor, Miguel Cardona. *See* FED. R. CIV. P. 25(d).

## BACKGROUND

### I. Relevant Facts[2]

MOHELA is "a non-profit corporation created by the State of Missouri" that "provides student loan servicing and higher education financing services." Doc. 1 ("Joy Compl.") ¶¶ 30–31; *Morgan v. MOHELA*, No. 4:24-CV-147-ZMB, Doc. 1 (E.D. Mo. Jan. 26, 2024) ("Morgan Compl.") ¶¶ 41–42. By virtue of its contract with the Federal Government ("the Contract"), MOHELA is also the "exclusive servicer" for the Public Service Loan Forgiveness (PSLF) Program. Joy Compl. ¶¶ 2, 31; Morgan Compl. ¶¶ 2, 42. The PSLF Program "forgives the remaining balance [of borrowers'] Direct Loans if two criteria are met: (1) [they make] the equivalent of 120 qualifying monthly payments under an accepted repayment plan . . . (2) while working full-time for an eligible employer." Joy Compl. ¶ 36 (quotation omitted); Morgan Compl. ¶ 49 (quotation omitted). The Department "is responsible for the oversight and implementation of all rules surrounding the federal student loan aid programs, including PSLF." Morgan Compl. ¶¶ 46–47.

Plaintiffs Jennifer Joy and Misty Thomas and consolidated Plaintiffs Spencer Morgan, Francis Novak, and Rowena Koenig (collectively, "Borrowers") have experienced similar problems with MOHELA regarding their student loans. Due to their enrollment in the PSLF Program, Borrowers' loans were transferred to MOHELA in 2022. *Id.* ¶¶ 16, 24, 32; Joy Compl. ¶¶ 15, 23. Borrowers subsequently completed the required payments to be eligible for loan forgiveness, but MOHELA failed to timely process their PSLF applications, thereby forcing Borrowers to make extra payments. Joy Compl. ¶¶ 16–21, 24–29; Morgan Compl. ¶¶ 17–22, 25–30, 33–40. Further, MOHELA's failure to process these PSLF applications is part of a widespread pattern that affected other borrowers in multiple states. *See* Joy Compl. ¶¶ 59–117; Morgan Compl. ¶¶ 72–140.

---

[2] As required at this stage, the Court accepts as true the well-pled facts from the complaints. *See infra* at 4–5.

## II. Procedural History

In December 2023, Joy and Thomas filed a class-action complaint against MOHELA. *See* Joy Compl. They propose a Nationwide Class, a Colorado Class, and a Florida Class encompassing all persons in those jurisdictions "who submitted applications for PSLF forgiveness to MOHELA that MOHELA has not yet processed and/or rendered a decision." *Id.* ¶ 117. The Joy Complaint asserts eight claims against MOHELA for: (1) violations of Colorado's Student Loan Equity Act, (2) violations of Florida's Deceptive and Unfair Trade Practices Act, (3) violations of Fair Debt Collection Practices Act (FDCPA), (4) breach of contract, (5) breach of fiduciary duty, (6) negligence, (7) accounting, and (8) unjust enrichment. *See id.* ¶¶ 126–197.

MOHELA moved to dismiss the Joy Complaint, asserting Eleventh Amendment immunity, sovereign immunity, preemption of all state-law claims under the Higher Education Act (HEA), and failure to state a claim upon which relief can be granted. Doc. 12 ¶ 2. Joy and Thomas opposed dismissal of all but the FDCPA claims (which the Court will not address further), Doc. 18, and briefing was complete after MOHELA filed a reply in support of dismissal, Doc. 23.

In January 2024, Morgan, Novak, and Koenig filed a similar class-action complaint against MOHELA and the Department. *See* Morgan Compl. They propose a Nationwide Class, a New York Class, and a California Class encompassing all persons in those jurisdictions who "submitted applications for PSLF forgiveness to MOHELA that MOHELA has not yet processed and/or rendered a decision." *Id.* ¶ 140. The Morgan Complaint brings ten claims against MOHELA for: (1) violations of the New York Student Loan Servicers Act, (2) violations of the New York General Business Laws, (3) violations of the California Consumer Legal Remedies Act (CCLRA), (4) violations of the California Unfair Competition Law, (5) FDCPA violations, (6) breach of contract, (7) breach of fiduciary duty, (8) negligence, (9) accounting, and (10) unjust enrichment. *Id.* ¶¶ 149–248. Unlike the Joy Complaint, these borrowers also assert a breach-of-contract claim against the Department regarding their promissory notes. *Id.* ¶¶ 249–61.

MOHELA also moved to dismiss the claims against it in the Morgan Complaint for the same reasons advanced in its motion to dismiss the Joy Complaint. Doc. 33 ¶ 2; *see also* Doc. 12 ¶ 2. The Department moved to dismiss the remainder of the Morgan Complaint for (1) improper venue, (2) lack of subject matter jurisdiction, and (3) failure to state a breach of contract claim. Doc. 35 at 1–2. After these borrowers opposed dismissal of all but the CCLRA and FDCPA claims (which the Court also will not address further), Docs. 37–38, MOHELA and the Department filed a reply in support, Docs. 39–40, so the motions are fully briefed.

The Court consolidated these cases in January 2025. Doc. 32. The parties have since filed multiple notices of supplemental authority, *see* Docs. 24–25, 45–49, 59–60, and the State of Missouri was given leave to file an *amicus curiae* brief in support of MOHELA's motions to dismiss, Docs. 61, 64; *see also* Doc. 66 (Borrowers' response to the State's brief). Additionally, after the Supreme Court issued its ruling in *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026), the Court ordered the parties to submit supplemental briefing concerning that decision's impact on the instant case. Doc. 67. In response, MOHELA "withdr[ew] . . . its Eleventh Amendment immunity argument from its pending motions to dismiss in the consolidated cases." Doc. 68 at 1.

## LEGAL STANDARDS

### I. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss for "lack of subject-matter jurisdiction." Federal courts are, by design, courts of limited jurisdiction. *Crain v. Crain*, 72 F.4th 269, 276 (8th Cir. 2023). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider" as well as "when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). "The plaintiff bears the burden of establishing subject-matter jurisdiction." *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023); *see also Edward L. & Janice R. Huffman Living Tr. v. United States*, 2016 WL 7508834, at *3 (E.D. Ark. May 11, 2016) (applying this burden to a jurisdictional ceiling for damages). "If the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." FED. R. CIV. P. 12(h)(3).

## DISCUSSION

As relevant here, MOHELA advances two main grounds for dismissal: (1) sovereign immunity under Missouri law bars most of Borrowers' causes of action; and (2) the remaining breach-of-contract claims fail as a matter of law. Doc. 13 at 4–5; Doc. 34 at 4–5. Because MOHELA was formed by the State, is controlled by and directly answerable to the State, and performs a service traditionally performed by the State, it is a public entity entitled to sovereign immunity. And because Borrowers fail to allege that they are a third-party beneficiary to MOHELA's contract with the Federal Government, their breach-of-contract claims must also be dismissed. For its part, the Department advances several grounds for dismissal of the lone claim against it, including lack of subject-matter jurisdiction. Doc. 35 at 1–2. Because Morgan, Novak, and Koenig fail to show that they seek damages of less than $10,000, this Court lacks subject-matter jurisdiction. Accordingly, the Court dismisses these cases without prejudice.

### I. Sovereign Immunity Under Missouri Law

MOHELA primarily argues that it is a "Missouri public entity entitled to invoke sovereign immunity." Doc. 13 at 9; Doc. 34 at 9. While conceding that "sovereign immunity is waived as to claims for breach of an express contract," Doc. 13 at 11 n.10; Doc. 34 at 11 n.12, MOHELA contends that the remaining claims must be dismissed because they either arise from statutes for which Missouri has not waived sovereign immunity or are tort claims generally barred by sovereign immunity, Doc. 13 at 9–10; Doc. 34 at 9–10. Borrowers argue that MOHELA is not a public entity, and thus cannot invoke sovereign immunity, because it is not "controlled by and directly answerable to the government" and does not "perform[] a service traditionally performed by the government." Doc. 18 at 9–11; Doc. 38 at 8–10.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). While "[t]he Eleventh Amendment is one particular exemplification of that immunity, . . . states also enjoy a broader sovereign immunity, which applies against *all* private suits, whether in state or federal court." *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (quotations and alterations omitted). "In Missouri, sovereign immunity is the rule rather than the exception." *Div. of Emp. Sec. v. Bd. of Police Comm'rs*, 864 F.3d 974, 980 (8th Cir. 2017) (citing MO. REV. STAT. § 537.600(1)). Absent "an express statutory exception . . . or a recognized common law exception, sovereign immunity is the rule and applies to all suits against public entities." *Poke v. Indep. Sch. Dist.*, 647 S.W.3d 18, 21 (Mo. banc 2022).

Under section 537.600, sovereign immunity "extends to . . . public entities that are not protected by the [Eleventh] Amendment." *Dykes v. Mo. Higher Educ. Loan Auth.*, No. 4:21-CV-83-RWS, 2021 WL 3206691, at *5 (E.D. Mo. July 29, 2021) (collecting cases). While the term "public entity" is not defined by statute, the Missouri Supreme Court has identified three key features: "(1) the governmental or public entity must be formed by government itself or by the voters acting as a group; (2) the entity must be controlled by and directly answerable to one or more public officials, public entities, or the public itself; and (3) the entity must perform a service traditionally performed by the government.'" *Id.* (citation omitted). "Whether sovereign immunity applies to a defendant is . . . a question of law." *Kreutz v. Curators of Univ. of Mo.*, 363 S.W.3d 61, 63–64 (Mo. Ct. App. 2011).

Here, Borrowers do not plead or otherwise allege waiver or another exception to sovereign immunity. *See Fernandez v. St. Louis Cnty.*, 538 F. Supp. 3d 888, 903–04 (E.D. Mo. 2021) (noting that "[s]overeign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case" (citations omitted)). And they also do not contest the first public-entity feature, acknowledging that "MOHELA was created by statute." Doc. 18 at 9; Doc. 38 at 8. Thus, the only question is whether the second and third features apply. Because MOHELA is controlled by and directly answerable to Missouri public officials and performs a service traditionally performed by the State, the Court concludes that it is entitled to sovereign immunity.

**a. State Control and Accountability**

MOHELA argues that this Court previously—and correctly—determined that MOHELA is "controlled by and directly answerable to one or more public officials, public entities, or the public itself." Doc. 13 at 9 (citing *Dykes*, 2021 WL 3206691, at *5–6); *see* Doc. 34 at 9. Borrowers suggest that "the analysis in *Dykes* . . . missed the mark" and emphasize that other courts have "found that Missouri made MOHELA 'a financially independent entity with expansive powers.'"[3] Doc. 18 at 8–9; Doc. 38 at 8–9. In particular, Borrowers highlight *Pellegrino v. Equifax Info. Servs.*, which observed that "Missouri ha[s] 'no veto power over MOHELA's regular activities,' no 'decision-making authority over MOHELA,' and Missouri requires 'nothing more than filing annual reports, a requirement that applies to any stock corporation.'" Doc. 18 at 9 (citing 709 F. Supp. 3d 206, 217–18 (E.D. Va. 2024)); *see* Doc. 38 at 8–9. Considering its governance and oversight requirements, the Court concludes that MOHELA is controlled by and directly answerable to the State.

As the Missouri Supreme Court has recognized, "the most critical[] requirement of entities entitled to sovereign immunity is that they are controlled by and directly answerable to one or more public officials, public entities, or the public itself." *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 919 (Mo. banc 1992). The relevant factors for this inquiry include: "who has the authority to manage and operate the entity; how those [individuals] are selected; the extent to which the entity is managed and operated autonomously from the government or the public; whether the entity has reporting obligations to the government or the public; and whether reporting obligations foster accountability." *Estes ex rel. Doe v. Bd. of Trs. of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 696 (Mo. Ct. App. 2021) (citation omitted). However, "[t]hese factors are neither exclusive, nor formalistic in their relative importance or application." *Id.*

---

[3] The parties also address the issue of state control in more detail in their briefing on MOHELA's Eleventh Amendment immunity argument. *See* Doc. 13 at 6–7; Doc. 18 at 6–7; Doc. 23 at 3–4; Doc. 34 at 7; Doc. 38 at 5–6; Doc. 40 at 3–4.

In challenging the holding in *Dykes*, Borrowers first argue that the board's 5-year term, longer than the 4-year term of Missouri's Governor, demonstrates "an intent by the legislature to insulate the board" and make MOHELA more autonomous. Doc. 18 at 6 (citing *Pellegrino*, 709 F. Supp. 3d at 216); Doc. 38 at 6; *see also* Doc. 66 at 7. However, "[a] State's appointment power, even if limited, restricts an entity's political independence because it may produce 'subtle or indirect manipulation of the entity's decision-making processes' by state officials." *Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Tr. Co.*, 640 F.3d 821, 828–29 (8th Cir. 2011) (citation omitted). Further, the statutory scheme for the appointment and removal of MOHELA's board members indicates that the board is not meant to be strongly insulated from the Governor.

MOHELA's board has seven members, five of whom are directly appointed by the Governor. *See Dykes*, 2021 WL 3206691, at *5 (citing MO. REV. STAT. § 173.360). The remaining two members are "a member of the coordinating board[] and the commissioner of higher education," who are likewise accountable to the Governor. MO. REV. STAT. §§ 173.005, 007, 360. This selection process alone is a strong indication of public control. *See Cas. Reciprocal Exch. v. Mo. Emps. Mut. Ins. Co.*, 956 S.W.2d 249, 255 (Mo. banc 1997) ("[C]omposition of the board does not defeat the requirement for control by public officials . . . so long as the governor or some other public official or the general public continues to appoint at least a majority of the board"); *Biden v. Nebraska*, 600 U.S. 477, 490 (2023) (finding that MOHELA "is subject to [Missouri's] supervision and control" because, among other reasons, its "board consists of two state officials and five members appointed by the Governor and approved by the Senate"). Additionally, the board members' terms were designed to be staggered, with the Governor able to appoint a controlling majority of the board in a single term. *See* MO. REV. STAT. § 173.360.

MOHELA's statutory scheme also provides the Governor with strong removal powers. In addition to "misfeasance, malfeasance, [and] willful neglect of duty," the Governor may remove a member for "other cause after notice and a public hearing," a notably lenient removal standard that further confirms MOHELA's direct accountability to public officials. MO. REV. STAT. § 173.360; *see Biden*, 600 U.S. at 490 (2023) (emphasizing the Governor's removal authority in concluding that MOHELA "is subject to [Missouri's] supervision and control"); *cf. Estes ex rel. Doe v*. 623 S.W.3d 678 at 700 (finding a lack of public accountability for an entity that allows removal only if the official "accepts any gratuity or compensation for the purpose of influencing his action with respect to the investment of funds of the system or in the operation of the fund").

Borrowers also identify some powers that shield MOHELA from total state control. *See* Doc. 18 at 9 (citing *Pellegrino*, 709 F. Supp. 3d at 216–17); Doc. 38 at 9; *see also Good v. Dep't of Educ.*, 121 F.4th 772, 805–08 (10th Cir. 2024) (finding that the ability of MOHELA "to acquire and dispose of property," "to form contracts," and "to sue and be sued," all suggest MOHELA possesses autonomy). Indeed, this Court recognized in *Dykes* that "the authority 'to sue and be sued' and 'to acquire, hold and dispose of personal property' . . . indicate that MOHELA enjoys some operational independence." 2021 WL 3206691, at *3 (citations omitted). And MOHELA's constitution as a "body corporate" further indicates that it enjoys some operational independence. MO. REV. STAT. § 173.360; *see Pub. Sch. Ret. Sys. of Mo.*, 640 F.3d at 827.

However, MOHELA's operational autonomy is curtailed in significant ways that confirm the entity ultimately remains subject to state control. As this Court noted in *Dykes*, MOHELA:

> is assigned by statute to the Missouri Department of [E]ducation, which requires [it] to provide a yearly report on its income, expenditures, bonds, and other forms of indebtedness issued. The statute also limits MOHELA's ability to sell certain loans without approval of the Missouri Department of Higher Education, and imposes restrictions on how it conducts its business, including placing limitations on investments, requiring [certain] distributions . . . and [limiting] loan origination.

2021 WL 3206691, at *3 (citations omitted); *see Biden*, 600 U.S. 477 at 490–91 (emphasizing that "MOHELA must provide annual financial reports to the Missouri Department of Education,

detailing its income, expenditures, and assets," that Missouri "sets the terms of its existence," and that "only the State 'can abolish MOHELA and set the terms of its dissolution'"). *Gowens v. Capella Univ., Inc.*, 2020 WL 10180669, at *3 (N.D. Ala. June 1, 2020) (recognizing "Missouri's significant and wide-ranging control over and oversight of MOHELA"). Accordingly, the Court agrees with the holding in *Dykes* that MOHELA satisfies the second requirement of Missouri's public-entity test. *See* 2021 WL 3206691, at *5.

**b. Traditional State Function**

MOHELA also contends that it "perform[s] a service traditionally performed by the government." Doc. 13 at 9 (citing *Dykes*, 2021 WL 3206691, at *5–6); *see* Doc. 34 at 9. Borrowers argue that "student loan servicing is [not] a service 'traditionally performed by the government'" and that MOHELA has cited no evidence in support of its position. Doc. 18 at 10; Doc. 34 at 9–10. In light of MOHELA's enabling statute and the context of Missouri's historical role in promoting higher education, it exhibits the third and final feature of a Missouri public entity.

Missouri public entities "perform a service traditionally performed by the government." *Stacy*, 836 S.W.2d at 919. However, Missouri courts have been careful to avoid "characterizing this requirement as calling for a governmental function; such terminology would confuse this requirement with the distinction between the two types of functions performed by municipalities and school districts, i.e., governmental versus proprietary." *Id.* Instead, courts should ask "whether this entity does what government has typically done in the past." *Id.* "[B]ecause government performs both governmental and proprietary functions, activities fitting within either of those categories should satisfy this requirement." *Id.*

While perhaps not obvious at first blush, MOHELA's enabling statute indicates that it performs a service typically performed by the government. *See Dykes*, 2021 WL 3206691, at *6. Missouri created MOHELA to fulfill several statutorily mandated goals related to higher education,[4] and the enabling statute expressly provides that MOHELA's powers "shall be deemed to be the performance of an essential public function." MO. REV. STAT. § 173.360; *see Biden*, 600 U.S. at 490 ("Missouri established [MOHELA] to perform the 'essential public function' of helping Missourians access student loans needed to pay for college."). "To fulfill this public purpose, [MOHELA] is empowered by [Missouri] to invest in or finance student loans, including by issuing bonds . . . servic[ing] loans and collect[ing] 'reasonable fees' for doing so" and the profits derived are used to "help fund education in Missouri." *Id.* (citation omitted). While the General Assembly's determination is likely sufficient, it also bears noting that "[Missouri] has historically taken an active role in encouraging students to attend university by establishing and overseeing public institutions, funding scholarships, and managing the Missouri Financial Assistance Program." *Dykes*, 2021 WL 3206691, at *6 (citation omitted); *see also Todd v. Curators of Univ. of Mo.*, 147 S.W.2d 1063, 1064 (Mo. 1941) ("[Missouri's] constitution recognizes higher education as a governmental function."). This legacy confirms that MOHELA "does what government has typically done in the past." *Stacy*, 836 S.W.2d at 919.

Accordingly, because MOHELA performs a service traditionally performed by the government, the entity possesses all three features common to Missouri public authorities. On that

[4] These objectives include: (1) "assur[ing] that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both," (2) "support[ing] the efforts of public colleges and universities to create and fund capital projects," and (3) "support[ing] the Missouri technology corporation's ability to work with colleges and universities." MO. REV. STAT. § 173.360.

basis, MOHELA is entitled to sovereign immunity, and the Court dismisses all claims against it except for breach of contract.[5]

## II. Breach of Contract

The only remaining claims against MOHELA are for breach of contract. MOHELA argues that these claims are legally deficient because "(a) Plaintiffs are neither parties to, nor third party beneficiaries of, the Contract; and (b) Plaintiffs fail to identify any provision of the Contract that MOHELA supposedly breached." Doc. 13 at 18; Doc. 34 at 21. Borrowers acknowledge that they are not parties to the Contract, Joy Compl. ¶ 166; Morgan Compl. ¶ 211, but contend that they are third-party beneficiaries and have adequately alleged a breach. Doc. 18 at 17–21; Doc. 38 at 18–22. The parties also dispute the threshold issue of which law governs this claim—Borrowers allege that the law of their home state applies, Joy Compl. ¶ 165; Morgan Compl. ¶ 210, while MOHLEA invokes federal common law, Doc. 13 at 18 n.12; Doc. 34 at 21 n.19. Because the claim is predicated on a federal government contract, the Court applies federal common law, which generally points to forum state law. But irrespective of whether the Contract is interpreted under Missouri law or federal common law, the Court concludes that Borrowers have failed to establish that they are third-party beneficiaries, and thus their breach-of-contract claims fail.

[5] MOHELA asserts that sovereign immunity under Missouri law bars all claims except for the breach-of-contract claim. Doc. 13 at 7–11; Doc. 34 at 8–11. While Borrowers acknowledge that argument, they only dispute that MOHELA is entitled to sovereign immunity under Missouri law. *See* Doc. 18 at 8–11; Doc. 38 at 8–10. Because Borrowers appear to accept MOHELA's position that sovereign immunity bars all but the breach-of-contract claims, the Court deems the issue waived. In any event, the Court is satisfied that MOHELA is correct. The other state-law causes of action are either torts or arise from sister states' statutes. Joy Compl. ¶¶ 126–197; Morgan Compl. ¶¶ 149–248. Borrowers do not allege waiver or another exception to sovereign immunity; MOHELA has disclaimed consent to suit, Doc. 13 at 4; Doc. 34 at 4; principals of comity merit dismissal of non-Missouri state law claims, *see Franchise Tax Bd. of California v. Hyatt*, 578 U.S. 171, 174–75 (2016); and Missouri public entities generally enjoy sovereign immunity for torts, *see Shell v. Ebker*, No. 4:04-CV-1817-CAS, 2006 WL 1026982, at *9 (E.D. Mo. Apr. 14, 2006) (collecting cases); *see also Mo. Pub. Entity Risk Mgmt. Fund v. Invs. Ins. Co.*, 338 F. Supp. 2d 1046, 1051 (W.D. Mo. 2004) (same).

**a. Choice of Law**

The parties have not identified a forum selection clause in the Contract, nor has the Court been able to locate one. Borrowers have pled that "the laws of their respective home states" applies, Joy Compl. ¶¶ 165–66; Morgan Compl. ¶¶ 210–11, but they never explain this assertion, and it is far from clear why the law of each Borrower's home state would govern a contract between MOHELA and the Federal Government. Nor do they address MOHELA's contention that other "courts have applied federal common law in determining whether an individual is a third party beneficiary of a federal government contract." Doc. 13 at 18 n.12; Doc. 34 at 21 n.19. In the absence of contrary authority, the Court is convinced by MOHELA's position.

"Federal common law governs the interpretation and construction of a contract between the United States and another party." *United States v. Basin Elec. Power Co-op.*, 248 F.3d 781, 796 (8th Cir. 2001); *see Hillside Metro Assocs. v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (same). However, courts "look to state law for guidance in defining the contours of the federal common law, [] unless a significant conflict exists between an identifiable federal policy or interest and the [operation] of state law, or the application of state law would frustrate specific objectives of federal legislation." *Prairie Land Holdings v. FAA*, 919 F.3d 1060, 1062 (8th Cir. 2019). In doing so, courts generally look to the law of the forum state in particular. *See Lackie v. Noe*, 182 F.4th 717, 723 (8th Cir. 2026); *see also Johansson v. Nelnet, Inc.*, 2021 WL 1169409, at *7 (D. Neb. Mar. 26, 2021) (applying forum state law for a breach-of-contract claim rather than the home state law of third-party beneficiary plaintiffs).

Because Borrowers' claims are predicated on a contract where the Federal Government is a party, federal common law governs the interpretation of that contract.[6] And regardless of whether the Court limits itself to pure federal law or looks to Missouri law for guidance, Borrowers have failed to adequately allege that they are third-party beneficiaries of the Contract.

---

[6] Even if federal common law did not apply, the reasons Borrowers identify to justify venue in this District indicate that the only alternative would be to apply Missouri choice-of-law principles, which point to Missouri substantive law over that of Borrowers' home states. *See* Joy Compl. ¶ 12; Morgan Compl. ¶ 13; *see Fuqua Homes v. Beattie*, 388 F.3d 618, 621 (8th Cir. 2004) (discussing the factors of Missouri's "most significant relationship test" for choice-of-law analysis).

**b. Third-Party Beneficiary**

*1. Federal Common Law*

Applying the prevailing Federal Common Law rule, MOHELA argues that the Borrowers were not intended beneficiaries because the Contract includes "express third party rights with respect to certain intellectual property issues" but "does not provide any third party beneficiary rights for borrowers." Doc. 13 at 19; Doc. 34 at 22. MOHELA also cites an array of cases where other courts found that "student loan borrowers . . . are not third party beneficiaries of the USDOE's loan servicing contracts." Doc. 13 at 19–20 (collecting cases); *see* Doc. 34 at 22 (same). Borrowers contend that they are intended beneficiaries because "[t]he Contract specifically lists the HEA and various regulations related to student loans that it states MOHELA must comply with." Doc. 18 at 18–19; Doc. 38 at 18–19. MOHELA has the better argument.

Under the prevailing federal common law rule, "[t]he proper test for determining third-party beneficiary status is whether the contract reflects the express or implied intention of the parties to benefit the third party." *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 521 (8th Cir. 2001) (citation omitted). "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." *Id.* (citation omitted). When a contract expressly provides beneficiary rights to one third party but lacks similar language as to a different third party, it "implies that the parties to the [] [c]ontract did not intend to make the [latter] third-party beneficiaries of their agreement." *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020).

The Court finds the reasoning in *Wade v. Pennsylvania Higher Educ. Assistance Agency* particularly persuasive in establishing that Borrowers are not intended beneficiaries of the Contract. 2022 WL 1115275 (D.N.J. Apr. 14, 2022). In *Wade*, a student-loan-borrower plaintiff seeking loan forgiveness argued that he was the third-party beneficiary of an agreement between the Pennsylvania Higher Education Assistance Agency (PHEAA) and the U.S. Department of

Education. *Id.* at *1. The *Wade* Court rejected the plaintiff's argument, noting that the agreement "expressly grants third party beneficiary . . . in the event of unauthorized disclosure of propriety information . . . [but] does not include any similar language with respect to student loan borrowers" and observing that "[HEA] expressly empowers only the Secretary of Education with the authority to enforce the HEA and rectify HEA violations." *Id.* at *2–3. Additionally, the operative contractual language in *Wade* is identical to language in the Contract, both with respect to the inclusion of third-party beneficiary language for intellectual property and the omission of such language for the borrowers. *Wade*, 2022 WL 1115275, at *2; Doc. 13-1 at 10; *Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:21-cv-11595-CPO-MJS, Doc. 19 at 21, (D. N.J. Aug. 30, 2021). Thus, the *Wade* Court's reasoning is applicable here. And Borrowers' contention that MOHELA's contractual obligation to comply with HEA indicates that they are intended third-party beneficiaries falls flat given that only the Secretary of Education has "the authority to enforce the HEA and rectify HEA violations." *Wade*, 2022 WL 1115275, at *3. Accordingly, under the prevailing federal common law rule, Borrowers do not qualify as third-party beneficiaries.

*2. Missouri Law*

While not addressed by either party, Missouri law sets forth an even more stringent standard for third-party beneficiaries:

> To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member. In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves. Furthermore, a mere incidental benefit to the third party is insufficient to bind that party.

*Bank of Am. v. UMB Fin. Servs.*, 618 F.3d 906, 913 (8th Cir. 2010) (citing *Nitro Distrib. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006)). While Borrowers plausibly allege an incidental benefit under the Contract, Doc. 18 at 20–21; Doc. 38 at 20–21, their claim fails because they cannot point

to any express language in the contract that evidences an intent to benefit them or their class. *See Ruff v. Bequette Constr.*, 662 S.W.3d 90, 101 (Mo. Ct. App. 2023) ("[O]ne who is neither a party to nor a third-party beneficiary of a contract does not have the legal right to enforce it.").

Accordingly, regardless of whether the Court looks to Missouri law, the Borrowers' breach-of-contract claims fail as a matter of law, and no viable claims against MOHELA remain. Thus, the Court grants MOHELA's motions to dismiss.

## III. Subject-Matter Jurisdiction for Claims Against the Department

All that remains are Morgan, Novak, and Koenig's breach-of-contract claims against the Department. *See* Morgan Compl. ¶¶ 249–61. The Department argues that these claims should be dismissed because the borrowers "fail to plead that their claims are for less than $10,000 as required by 28 U.S.C. § 1346(a)(2)." Doc. 36 at 7–8. Morgan, Novak, and Koenig argue that section 1346(a)(2) does not impose an affirmative obligation upon them "to plead their claims are less than $10,000." Doc. 37 at 8. They are incorrect under well-settled requirements for invoking a federal court's jurisdiction. Thus, because these borrowers have failed to meet their burden of establishing the $10,000 limit, this Court must dismiss those claims for lack of subject-matter jurisdiction.

"The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a). Under section 1346(a)(2), "[a] plaintiff attempting to invoke the jurisdiction of the federal district courts bears the burden of establishing that the claim does not exceed this $10,000 jurisdictional limit." *Huffman Living Tr.*, 2016 WL 7508834, at *3 (citing *Colorado Dep't of Highways v. U.S. Dep't of Transp.*, 840 F.2d 753, 755 (10th Cir. 1988)).

Here, the parties do not dispute that the $10,000 jurisdictional limit applies. Doc. 36 at 5–6; Doc. 37 at 8. And Morgan, Novak, and Koenig all but concede that they have failed to meet their pleading burden. Doc. 37 at 8. They merely suggest that section 1346(a)(2) "does not affirmatively require plaintiffs to plead their claims are less than $10,000." *Id*. But in addition to ignoring the general rule allocating the burden to the party invoking federal-court jurisdiction, their argument is undercut by applicable Eighth Circuit authority, see *Shaw v. Gwatney*, 795 F.2d 1351, 1356 (8th Cir. 1986) (finding that a plaintiff bringing a claim subject to section 1346(a)(2) has "to allege that his claim was for less than $10,000"). Further, Morgan, Novak, and Koenig do not even suggest their claims (or those of the putative class) are for less than $10,000. Accordingly, the Court lacks subject-matter jurisdiction and must dismiss these claims.[7] *See* FED. R. CIV. P. 12(h)(3).

**CONCLUSION**

Accordingly, the Court **GRANTS** Defendant MOHELA's [12] [33] Motions to Dismiss and **GRANTS** Defendants United States Department of Education and Linda McMahon's [35] Motion to Dismiss, each without prejudice. Separate Orders of Dismissal will follow.

So ordered this 29th day of September 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

[7] The Court also denies Morgan, Novak, and Koenig's conditional request for leave to amend their Complaint. *See* Doc. 37 at 8. As threshold matter, that request is insufficient, as it fails to "indicate[] how it would make the complaint viable," *See Pet Quarters v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009); *see also King v. United Parcel Serv.*, 152 F.4th 915, 923 (8th Cir. 2025) ("The general rule is that a district court can deny 'leave to amend' when a plaintiff does not submit a motion [or] offer a proposed amended complaint." (quotation and alterations omitted); *see also* E.D. MO. L. R. 4.07. And even if an amended complaint could remedy the jurisdictional issue, Morgan, Novak, and Koenig effectively concede that venue does not lie in this District. *See* Doc. 37 at 10–11; *see also* Doc. 39 at 1–2 (asserting improper venue). Accordingly, the Court agrees with the Department that "[t]he most efficient path forward is to simply dismiss [the] claim[s] against the Department [without prejudice], which would permit [these borrowers] to refile their claim in an appropriate judicial district if they so choose." *Id.* at 3.